Filed 5/6/15  In re Alexandra M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ALEXANDRA M., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D067033 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3745A-B) |
| v. | |
| WILLIAM M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

William M. appeals orders terminating dependency jurisdiction over his minor daughters, Alexandra M. and Sierra M.; granting sole legal and physical custody to their mother K.M.; and denying visitation to William. William contends that the juvenile court abused its discretion under Welfare and Institutions Code section 362.4 by denying visitation.[1] We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2013, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of 11-year-old Alexandra and nine-year-old Sierra. The petitions alleged that K.M. failed to provide a suitable home for Alexandra and Sierra. Their home was filthy and unsanitary, with piles of dog feces in every room, smeared feces on walls and door frames, trash covering the floor of the kitchen, and brown water in the bathtub. The smell of feces was overpowering. The petitions alleged that the home had been in this condition since the middle of 2013, including in April and August 2013. The Agency concluded that Alexandra and Sierra were at substantial risk of suffering serious physical harm or illness as a result of K.M.'s failure to provide adequate shelter.[2]

K.M. married William in 2009. They had been in a relationship for approximately 10 years before then. K.M. told the Agency that William abused cocaine and had brief

---

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    K.M.'s son, Devan E., also lived in the home. The Agency did not seek to bring him under the protection of the juvenile court because of his age (17 years) and his ability to care for himself. William is not Devan's biological father.

2

periods of sobriety. William pushed and hit K.M. occasionally. William had a long criminal history from 1989 onward, including arrests for domestic violence, drug possession, theft, burglary, and criminal threats. In January 2012, William was arrested on misdemeanor battery charges after an altercation involving him, K.M., and Devan. K.M. told police that she and William were arguing because K.M. did not want William to take the family truck into town to buy drugs. William spit on K.M. and pushed her several times. Devan attempted to intervene. William resisted, pulled K.M.'s hair, and left the house. After his arrest, William was ordered to attend anger management classes. William did not do so, and a bench warrant was issued for his arrest in February 2013. The warrant was outstanding at the time the petitions were filed. After another incident of domestic abuse in September 2012, K.M. obtained a criminal protective order against William prohibiting him from having "negative contact" with her or with Devan.

Despite the protective order, William continued to live with K.M. and the children. After another fight, in July 2013, William returned to his home state of Florida. While there, he harassed K.M. with telephone calls and text messages. In a sworn declaration, K.M. said that she had received more than 5,000 text messages from William between July and September 2013. Over a period of 16 days in October, K.M. received more than 1,000 text messages from him. K.M. said that many of the messages were threatening. One text message said, "I'm coming for you bitch." K.M. said that William told her that he was going to "snatch" his daughters from K.M., or that he would kill them all. In Facebook posts, William called K.M. a "fucking whore" and a "bitch." William also called a child abuse hotline alleging abuse and neglect of Alexandra and Sierra.

3

Before filing the petitions, an Agency social worker contacted William. William yelled and cursed at the social worker, telling her "You need to go get my kids out of the apartment you bitch." After the social worker was unable to calm William down, she ended the phone call. In a subsequent conversation, William claimed that K.M. was a chronic drug abuser and a hoarder, that she had been a drug courier for the Hell's Angels motorcycle gang, that her boyfriend was a drug abuser, that Devan openly smoked marijuana at home, that K.M. and Devan tie Sierra down in a bathtub, and that K.M.'s mother's home (where Alexandra and Sierra were then staying) was in severe disrepair. William also claimed to have been sober himself for five months. He stated that he had suffered eight heart attacks and had only a year to live.

Text messages that William sent to K.M. indicated that he was homeless. He would not provide a residential address in Florida to the Agency. He sent K.M. text messages indicating that he was using drugs: "I think the guy knows I'm high as fuck though. The lines in the road look all squiggly, god I'm still so high." He sent another message later the same day claiming that he would "[p]arty until my heart explodes." William told the Agency that he wanted custody of Alexandra and Sierra.

At the detention hearing, the court found that the Agency had made a prima facie showing under section 300, subdivision (b), and ordered that Alexandra and Sierra be detained in out-of-home care. The court later sustained the allegations of the petitions. At the disposition hearing, the court removed Alexandra and Sierra from K.M.'s custody and ordered reunification services for K.M. and William. During court hearings, William

4

was disruptive, angry, and inappropriate. At K.M.'s request, the juvenile court issued a three-year restraining order against William.

K.M. made progress with her services. She tested negative for drugs and alcohol on multiple occasions. Agency inspections revealed that she restored her home to a more sanitary state. Alexandra and Sierra began a 60-day trial visit, which was successful. In advance of the six-month review hearing, the Agency recommended that jurisdiction be terminated despite some lingering concerns.

An Agency social worker contacted William regarding services, and he reacted violently. He screamed at the top of his lungs, stated that he would not participate in "[a]ny fucking drug treatment program," and refused to take a drug test. When the social worker tried to explain that services would help him reunify with his children, William screamed "[y]ou can suck my d...k" and hung up the phone. William did not participate in any services.

William had supervised telephone visitation with Sierra on several occasions. (Alexandra did not wish to speak with William.) During these visits, he was generally appropriate and loving toward Sierra, who is severely cognitively impaired and nonverbal. When he turned his attention to the supervising social worker, however, William was hostile and inappropriate. After several calls, William decided not to continue with visitation. With Sierra on the line, William told the social worker, "I give up, you win, you can have them, I can't do this anymore, and don't worry about calling anymore."

By the time of the six-month review hearing, William was in law enforcement custody in Florida. K.M. reported that he would not be released for a couple of years. William sent a letter to the court apologizing for his behavior during the dependency case. He wrote that he wanted K.M. to have "permanent reunification" with Alexandra and Sierra.

At the six-month review hearing, the court terminated jurisdiction over Alexandra and Sierra and granted sole legal and physical custody to K.M. William asked for "visitation, however structured." The court denied this request. The court stated, "I'll also find by clear and convincing evidence that it would be . . . detrimental for the children to visit with [William]. He's in custody in a different state. There's a criminal protective order in place in this state. He has done nothing with regard to his reunification plan . . . ." The court issued custody orders accordingly. William appeals.

DISCUSSION

William contends that the juvenile court abused its discretion under section 362.4 by denying him visitation with Alexandra and Sierra following termination of jurisdiction. That section provides, in relevant part, as follows: "When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and proceedings for dissolution of marriage, for nullity of marriage, or for legal separation, of the minor's parents . . . are pending in the superior court of any county, or an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4.)

6

" 'When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 203.) "[I]n making exit orders, the juvenile court must look at the best interests of the child." (*In re John W.* (1996) 41 Cal.App.4th 961, 973; see *In re A.J.* (2013) 214 Cal.App.4th 525, 536.) In determining custody and visitation, "the court is not restrained by 'any preferences or presumptions.' " (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

"We normally review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion [citation] and may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 299.) The court's underlying factual findings are reviewed for substantial evidence. (*In re A.J.*, *supra*, 214 Cal.App.4th at p. 535, fn. 7.) William does not dispute these well-settled standards.

The record shows that William has a long criminal history, suffered from an untreated drug problem, engaged in domestic violence against K.M. and Devan, and was hostile and abusive toward Agency social workers and the court. William threatened to "snatch" his children from K.M. or kill them all. He sent threatening and abusive text messages to K.M. As a result of William's abuse, K.M. obtained a civil restraining order prohibiting any contact with her and a criminal restraining order prohibiting any negative

contact with her and Devan.  In this dependency case, William did not complete any

court-ordered services, was openly contemptuous of drug treatment and drug testing, and

was not committed to reunification with the minors.[3]  Given this history, the court was

well within its discretion to determine that visitation with William would not be in the

best interests of Alexandra or Sierra.

William points out that his visits with Sierra were loving and appropriate, and that

he wrote a respectful letter to the juvenile court at the conclusion of this case.  These facts

alone, however, do not compel a finding that visitation in any form would be in the

minors' best interests in light of the other facts we have discussed.  William himself

ended his telephonic visits with Sierra in a fit of frustration.  Alexandra never wanted to

visit with William in the first place.  (See *In re Danielle W.* (1989) 207 Cal.App.3d 1227,

1238-1239 [holding forced visitation may not be in the best interests of a minor].)  The

juvenile court could reasonably find that the prospect of inconsistent visits and/or

inappropriate conduct by William—particularly in light of the facts outlined above—

would be worse for the children than no visits at all.  Similarly, to the extent the visitation

order prohibits contact by letter, the court could reasonably find that such contact was not

in the minors' best interests based on William's history of threats and harassment by text

message, among other reasons.

William also claims that the court abused its discretion because its order denying

visitation effectively prevents William from seeking modification of the order in the

---

[3]     Although William was not named in the petitions, the evidence showed that the
unsanitary condition of the family home existed prior to William's departure for Florida.

future. William argues that, with visitation, he would be informed of K.M.'s address for service of process instituting family law proceedings; without visitation, he cannot discover her address. William's argument is meritless. The court's order denying visitation has no legal effect on William's ability to institute proceedings in family court to modify the visitation order. William is not entitled to visitation simply to enable him to discover K.M.'s address. William's inability to contact K.M. or discover her address is a product of the restraining orders for which William, through his abusive conduct, is responsible. While the court may not delegate the power to determine the right and extent of William's visitation to nonjudicial officials or private parties (see *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123), the court did not make any such delegation here. The court conclusively determined William's visitation in its orders: none.

## DISPOSITION

The orders are affirmed.

_____

AARON, J.

WE CONCUR:

_____

HUFFMAN, Acting P. J.

_____

McDONALD, J.

9