Filed 8/14/20  In re K.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.C. et al., Persons Coming Under the Juvenile Court Law. | C089726 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.G.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD238788, JD238789) |

Appellant M.G., father of the minors, appeals from the juvenile court's orders partially granting his petition for modification and exit orders granting mother custody of the minors and terminating dependency jurisdiction.  (Welf. & Inst. Code, §§ 388, 390, 395.)[1]  He contends he was denied due process because he was not notified that mother,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

who did not initially object to father's section 388 petition, had changed her position before opposing his petition at the continued hearing for modification. He also assigns various errors to the custody and visitation orders. We shall strike a provision in the visitation order and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A detailed recitation of the facts is unnecessary to the resolution of this appeal.

The minors in this case had been the subject of a November 2015 safety plan that placed the minors with father and prohibited mother being around them due to her regular substance abuse. The minors came to the attention of the Sacramento County Department of Child, Family and Adult Services (Department) again in December 2017 when they were found in mother's care. The minors were then two and three years old. Father had been arrested on felony charges in September 2017 and had no projected release date. Father claimed to have left the minors in the care and custody of the paternal grandmother but she had had a stroke in November, and subsequently passed away, and he had not made adequate arrangements for continued care.

The Department filed section 300 petitions on behalf of the minors based on mother's continued substance abuse and failure to obtain necessary medical care for the minors, and father's failure to provide adequate care and failure to protect the minors from mother's substance abuse. In May 2018 the juvenile court sustained allegations in the petition and adjudged the minors dependents of the court. The minors were removed from parental custody and mother was provided reunification services. Father, who has a lengthy criminal history, was bypassed for services pursuant to section 361.5, subdivision (b)(12) and (16). Regular visitation consistent with the minors' well-being was ordered for both parents.

Father had supervised telephone calls with the minors, which lasted about five to 10 minutes, until he was transferred to state prison in Tracy (which the record reflects occurred sometime prior to September 2018). The juvenile court ordered father's visits limited to phone and letter contact while he remained in custody. Mother visited

2

regularly and progressed in her reunification services and, in December 2018, the minors were placed in her care. A review hearing was scheduled for April 18, 2019.

Father was transferred to Solano State Prison in November 2018 and transferred to Sierra Conservation Center in Jamestown sometime prior to January 31, 2019. On April 5, 2019, father filed a section 388 petition seeking modification of the juvenile court's December 2018 visitation order and requesting contact visitation two weekends a month, preferably the second and fourth weekend of each month.[2] The petition requested mother, or another family member, bring the minors. As changed circumstances supporting his petition, father explained that he had not had any contact visits with the minors but had been participating in services while incarcerated. On February 20, 2019, father's institution classification committee approved him for contact visits with minors. He alleged that "[g]iven the bond that the children and the father have, and the history of the father being the primary caretaker for the children, it is in the children's best interests to be able to have contact visitation with their father, especially with his engagement and efforts in services in the past 6 months."

Also on April 5, 2019, the Department filed an in-home review report. The report summarized mother's progress and recommended mother be awarded sole legal and physical custody, and father be provided supervised visitation.

At the commencement of the April 18, 2019 combined hearing on father's section 388 petition and the section 364 in-home review, minor's counsel requested a continuance. Counsel had been unable to observe the minors in mother's home prior to the hearing. At this hearing, father told the court that, at his current correctional facility, weekend visits are permitted from 8:00 a.m. to 3:00 p.m. He explained, that "[t]hey are

---

[2] The petition described the December 2018 visitation order as providing for regular visitation with the minors, consistent with their well-being, at the discretion of the Department. Although such language was on the proposed order provided to the court in December 2018, the box to include the language as part of the order is not checked. The court did, however, appear to make interlineations on the paragraph to indicate it would apply only to father, which could indicate its intent to include the paragraph in its order.

3

supervised in a visitor room where they have several officers that are there and closed-circuit cameras.  It would be a contact visit for up to eight hours or whatever just in case -- well, depending on if more visitors come, then they will shorten other visitors' visiting days, but it will be on the weekend."  Father summarized the services in which he had been participating, took responsibility for the harm he had inflicted on his family, and expressed his love for the minors.  His earliest release date is 2022.  The juvenile court told father it was impressed with the progress father had made and encouraged him to continue in his efforts.  No objection having been made to the continuance, the court continued the matters to May 2, 2019.  Father's counsel requested father be permitted to waive his appearance at the continued hearing so he would not incur a lengthy absence from his correctional facility, since such an absence would result in father being dropped from the classes he was attending.  The court granted his request and indicated it would enter a transport order for father to be transported directly to Sierra Conservation Center in Jamestown to prevent any delay in father's return.  The attorney specially appearing for mother's counsel then indicated to the court that she had spoken with mother and mother did not object to father's section 388 request.  Neither minors' counsel nor the juvenile court gave any indication of their opinion of father's request.  The hearing was continued to May 2, 2019.

Father's counsel was present at the May 2, 2019 hearing but father was not, as he had waived his appearance. Mother appeared with her appointed counsel.  No objections being made, the court addressed father's petition for modification and the review hearing together.  Minor's counsel began by agreeing with the Department's recommendation to terminate dependency.  Regarding father's petition, minors' counsel indicated that father's visitation request had been "discussed . . . at calendar call" and that mother was intending to express concern about the request.  Minor's counsel objected to father's request, noting previous discussions about less frequent visits, and argued for quarterly or semiannual visits.  Minor's counsel argued twice monthly visits, as requested by father, was too frequent, "given the distance and the burden it places on both the mother and the children."

4

Mother's counsel also agreed with the Department's recommendation to terminate dependency. Regarding father's section 388 petition, mother's counsel objected to father's request on the basis of the unknown safety of the visitation environment for the young minors (ages three and four), the emotional impact on the minors visiting in a correctional facility, and the impact on the minors as a result of the lengthy travel time involved, which was estimated to be three to four hours per visit.

Father's counsel stated that, at the prior court hearing, father had indicated the Jamestown facility permitted visits between 8:00 a.m. and 3:00 p.m. on Saturdays and Sundays and that father believed other family members would help transport the minors to visits. Counsel added: "Unfortunately, he's not here to give us all the details that [mother's counsel] raised about what kind of environment it would be, if it would just be [one] room with the father, and a supervisor and the children or if it would be a general large room where visitations with other inmates and their family members are happening at the same time." Counsel did not, however, ask for a continuance.

The juvenile court found the argument that the minors were young and it was unknown "how those visits will be," persuasive. It remarked that it was also clear father loved the minors. The court also expressed concern about the possibility father could get transferred to a facility much further away. With respect to father's request for increased visitation, the court granted father one visit per year for as long as he remains incarcerated in Jamestown. The juvenile court further ordered: "If [father] gets moved to a different prison, then the mother has discretion whether she wants to do that even once a year. Once the father is released he'll get once-a-month supervised visitation determined by a third party of the mother. If he doesn't approve of that third party it will be agency supervised." The court clarified with mother's counsel, "I'm assuming you want supervised because of his conviction history, or is there something else?," to which mother's counsel stated, "Well, that. In addition, he has not seen the children in about a year and a half, so we don't know the children's reaction to the father. I think probably the most significant is the criminal history." The court then reiterated and entered its visitation orders.

5

Father's counsel then requested father share legal custody and mother be given "primary" rather than "sole" physical custody because father is hoping that when he is released from prison, he can share physical custody. Without further comment, the juvenile court awarded mother sole physical and legal custody.

DISCUSSION

I

*Due Process*

Father contends he was denied due process when the hearing on his section 388 petition for modification proceeded without notice that mother had changed her position and was opposing his request. Implying that he waived his appearance *because* mother had indicated her assent to his request, he argues he was "ambushed" by her change in position. We reject his contention.

Father had the sole burden of proof on his petition for modification, *regardless* of whether another party agreed with, or opposed, the proposed modification. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157) Father provides no authority for the proposition that he is entitled to advance notice of the position the other parent intends to take, or any change in that position, regarding his petition for modification. Indeed, the JV-180 form, itself, has a place to indicate that the position of other parties is unknown, as that is often the case with such petitions. We reject his unsupported argument that a parent's change in position, without advance notice, violates notions of fundamental fairness and due process.

In any event, even if father had been entitled to notice of mother's changed position, no due process objection was made in the juvenile court. "In dependency litigation, nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court; otherwise those arguments have been waived and may not be raised for the first time on appeal." (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) Despite the constitutional status of due process claims, they also may be forfeited by failure to object. (*In re A.E.* (2008) 168 Cal.App.4th 1, 4-5; *People v. Saunders* (1993) 5 Cal.4th 580, 589-590.)

6

Father's counsel was present at the May 2, 2019 hearing and was aware of mother's changed position. "The general rule is that personal appearance by a party at a civil proceeding is not essential; appearance by an attorney is sufficient and equally effective. [Citations.]" (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 445.) Counsel did not object to proceeding with the hearing, nor did she request a continuance in order to secure father's attendance or provide additional notice to father. Thus, father's claim of lack of notice regarding mother's changed position is forfeited by counsel's failure to object to the proceeding on notice and due process grounds. (*In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1344; *People v. Smith* (2001) 24 Cal.4th 849, 852; *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412.)

II

*Custody and Visitation Orders*

When the juvenile court terminates dependency jurisdiction, it has authority to make orders addressing custody and visitation. (§ 362.4; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) Those orders focus on the minors' best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) "If there is a pending marital or paternity proceeding relating to the child, the custody order will be transferred to the existing family court file. (See [§ 362.4], subd. (b).) Otherwise, the order may be used to open a new file in the superior court of the county in which the parent who has been given custody resides. (See *id.*, subd. (c).) The order shall continue 'until modified or terminated by a subsequent order of the superior court.' (*Id.*, subd. (b).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 863.) "An order entered pursuant to section 362.4 is commonly referred to as an 'exit order.' [Citation.]" (*In re Nicholas H., supra*, at p. 269.)

We review custody and visitation exit orders for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Such determinations are not disturbed in a dependency proceeding in the absence of an arbitrary, capricious, or patently absurd exercise of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) A court can also abuse its

7

discretion by committing legal error.  (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 161.)

## A.  Legal Custody

Father asserts the juvenile court abused its discretion in awarding mother sole legal custody because the court failed to articulate any basis for not awarding joint legal custody and no basis is apparent in the record.  We reject his assignment of error.

Father was not entitled to a statement of reasons in connection with the juvenile court's custody decision.  (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713 [the Welfare and Institutions Code "does not require a specific statement of reasons be given when making a custody order"].)  Moreover, contrary to father's contention, the record supports the juvenile court's order.

Legal custody, as distinguished from physical custody, is "the right and the responsibility to make the decisions relating to the health, education, and welfare of a child."  (Cf. Fam. Code, §§ 3003, 3006 & §§ 3004, 3007.)  Here, in light of father's incarceration, there was no practical way for parents to effectively communicate about the daily decisions regarding the health, education and welfare of the children.  Father could not be easily reached by telephone or in person at his place of incarceration.

In support of his argument that he is entitled to joint legal custody, despite his current incarceration, father emphasizes that the mere fact that a parent is incarcerated is insufficient to support dependency jurisdiction without any evidence of risk to the child, so long as the incarcerated parent makes arrangements for the child to be cared for during the parent's period of incarceration.  (See § 300, subd. (g); *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672-673.)  He also notes that the fact that a parent is incarcerated cannot serve as the sole basis denying a request for custody under section 361.2.  (*In re V.F.* (2007) 157 Cal.App.4th 962, 969-970; but see *In re A.A.* (2012) 203 Cal.App.4th 597, 606-609 [limiting *In re V.F.*'s holding to cases where a child has not been removed from the incarcerated parent under section 361, subdivision (c)].)  Father then attempts to take these principles one step further by arguing that if incarceration alone is an insufficient basis for dependency jurisdiction or denying a

8

noncustodial parent's request for custody under section 361.2, it also cannot be the deciding factor when a court exercises its discretion at a review hearing to grant sole custody to the remaining, nonincarcerated parent. We reject this argument and conclude that father's incarceration can properly serve as a factor in the court's decision not to award joint legal custody.

Nothing in the Welfare and Institutions Code, Family Code, or case law gives an incarcerated parent an absolute right to legal custody. Moreover, it is well established that, contrary to father's suggestion, the family law presumption favoring joint custody does not apply to juvenile court custody orders entered upon termination of jurisdiction. (*In re Jennifer R., supra*, 14 Cal.App.4th at pp. 711-713.) While family law has a presumption favoring joint custody, "application of a family-law-based joint custody presumption would be inconsistent with the purpose of juvenile court law." (*In re Chantal S., supra*, 13 Cal.4th at p. 206.) Instead, the dependency court, " 'which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' [Citation.]" (*Ibid.*)

In sum, we conclude the juvenile court acted within its discretion in entering its custody order awarding sole legal custody to mother. Should circumstances change, because father is transferred or released, or otherwise, father is free to seek modification of the custody order in the family law court. (§ 302, subd. (d); see also *In re Jennifer R., supra*, 14 Cal.App.4th at p. 714.)

## B. Visitation Order While Father is in Jamestown

Father contends the juvenile court's visitation order providing him one visit per year while he is in the correctional facility in Jamestown was an abuse of discretion "because [the court] misapplied the law, did not consider all the material facts, and based its ruling on speculation, not substantial evidence." We find no abuse of discretion.

At the May 2, 2019 hearing, mother's counsel objected to father's request for twice monthly in-person visits at the Jamestown facility on the basis of the unknown aspects of the visitation environment for the young minors (ages three and four), such as

9

who would be present, whether there was a possibility that other inmates would be in the room and could become unruly or use loud obscenities, the emotional impact on the minors visiting in a correctional facility (including security screening and measures, and the correctional institution environment in general), and the impact on the minors as a result of the lengthy travel time involved, which was estimated to be three to four hours per visit, and the additional time involved in complying with prison security screening. Mother's counsel suggested letter and telephone contact while father is incarcerated would be more appropriate.

Father's counsel responded that, at the prior court hearing, over which this particular judge had not presided, father had indicated the Jamestown facility permitted visits between 8:00 a.m. and 3:00 p.m. on Saturdays and Sundays and that father believed other family members would help transport the minors to visits. Counsel added: "Unfortunately, he's not here to give us all the details that [mother's counsel] raised about what kind of environment it would be, if it would just be [one] room with the father, and a supervisor and the children or if it would be a general large room where visitations with other inmates and their family members are happening at the same time."

The juvenile court found mother's counsel's argument that the minors were young and it was unknown "how those visits will be," persuasive. As father now points out, father had, in fact, provided some information regarding the visitation environment. He had explained at the previous hearing that other inmates would be in the visitor room, along with several officers and closed-circuit cameras. He argues that, because the court did not consider this information at the May 2, 2019 hearing, its order was an abuse of discretion. We disagree.

The additional information provided by father did not sufficiently address or resolve the safety issues raised by mother's counsel so as to undermine the visitation order. The concern was that other inmates may be present and the information provided by father did not dispel, but rather, *confirmed* that to be a concern.

In any event, while the juvenile court had some questions as to the environment of visitation in the Jamestown facility, the court's remark that it was unknown "how these

10

visits will be" does not reveal a sole reliance on the nature of the visitation room itself. The juvenile court also considered argument about the impact, emotional and physical, of the length of travel, the additional time to check in, go through security, and of visiting in a correctional institution environment, on these very young minors who had not seen father in almost two years. All of these factors, affect "how the visits will be."

We also reject father's argument that the juvenile court misapplied the law. Citing to case law applicable to visitation requirements when visitation is a component of reunification services, he appears to argue, rather ambiguously, that the court was required to consider facts such as the distance between the minors' home and the prison and whether the parent's incarceration was due to abusing the child, in addition to the minors' ages, in determining an appropriate visitation schedule in the minors' best interests. Not only are the cases cited by father inapplicable to custody and visitation orders entered upon termination of dependency, they are unhelpful in establishing error. Additional factors, such as these, were argued and considered by the juvenile court in this case.

## C. Future Visitation Order if Father is Transferred

The juvenile court's exit order provided for yearly visitation while father remained at the correctional facility in Jamestown. In the event father is transferred to a different correctional facility, the court gave mother the discretion to decide whether to bring the minors to that facility for visits "even once a year." Father contends this is an improper delegation of judicial discretion.

"Once visitation is ordered, the court may delegate responsibility for managing details such as the time, place and manner of visits, none of which affect a parent's defined right to see his or her child. [Citations.] However, the visitation order must give some indication of how often visitation should occur. [Citations.] A court may not abdicate its discretion to determine whether visitation will occur to a third party. [Citations.]" (*In re E.T.* (2013) 217 Cal.App.4th 426, 439.) A visitation order granting a third party complete and total discretion to determine whether visitation occurs at all is improper. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237.) "The rule of

11

nondelegation applies to exit orders issued when the dependency jurisdiction is terminated. [Citations.]" (*In re Armando L.* (2016) 1 Cal.App.5th 606, 616; accord, *In re T.H., supra*, 190 Cal.App.4th at p. 1123.)

In this case, the juvenile court's visitation order gave mother complete and total discretion to decide whether father would have any visits at all in the event he is transferred to a different correctional facility. We note, however, that father (through counsel) did not object to this delegation of discretion in the juvenile court.

A party forfeits a claim that the juvenile court improperly delegated its visitation authority to a third party when he or she fails to object in the juvenile court. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685-686; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; *In re Anthony P.* (1995) 39 Cal.App.4th 635, 640-642.) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule. [Citations.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 961-962.)

We will, nonetheless, excuse the forfeiture and accept the Department's concession that the visitation order, as it relates to future visits should father be transferred to another correctional facility, is improper. (See *In re S.B., supra*, 32 Cal.4th at p. 1293.)

We shall not, however, remand the matter for the juvenile court to enter a new visitation order. Whether, when and where father may be transferred in the future is entirely speculative. It is not practical for the juvenile court to enter specific visitation orders in accordance with the minors' best interests without any information as to where father may be transferred and the conditions related to that facility. For example, the court cannot know how far minors would have to travel, whether the facility has a place for safe visitation with young minors, or even what age the minors will be at the time of father's possible transfer(s). (See, e.g., *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1792 [visitation where parent is incarcerated "may or may not be reasonable depending on the rules and regulations of the institutions involved, the condition of the parent, and

the distance from the children's placement"].) Accordingly, because any future transfer or transfers remain purely speculative and no information is available to the juvenile court to permit it to exercise its discretion, we shall, instead of remanding the matter, strike this visitation component of the exit order. Should father be transferred to another correctional facility prior to his release from custody, he can move the family law court for an appropriate visitation order. (§ 302, subd. (d); see also *In re Jennifer R., supra*, 14 Cal.App.4th at p. 714.)

### D. Supervised Visitation Order Upon Father's Release

Finally, father contends the juvenile court's order providing that his visitation with the minors after he is released from custody be supervised is an abuse of discretion. This contention is forfeited and lacks merit.

Ordinarily, a parent's failure to object and bring a matter to the juvenile court's attention results in a forfeiture because it deprives the court the opportunity to correct any error in the first instance. (*In re S.B., supra*, 32 Cal.4th at p. 1293.) Father failed to object to having his postrelease visits supervised. We reject his contention that his counsel's subsequent request that father share legal custody and mother be given primary, rather than sole physical custody was sufficient to preserve the issue of whether father's visits, after his release from custody, should be supervised. Because father failed to bring the matter of postrelease unsupervised visitation to the juvenile court's attention, we conclude he forfeited the right to now raise it on appeal.

In any event, we would find no error. Father has a lengthy and significant criminal history, including convictions for serious and violent felonies, and is required to register as a sex offender. Mother had also reported previous domestic violence committed by father in the presence of the minors. Father had been bypassed for services and, although he had participated in services at his current place of incarceration, he had not completed them or been evaluated. He had not had any contact visits with the three- and four-year-old minors since his arrest in September 2017, almost two years earlier, and was not eligible for release for at least another two years. Thus, the Department had been unable to observe the appropriateness of the visits or emotional impact the visits

13

may have on the minors.  In light of these circumstances, it was not an abuse of discretion to order father's postrelease visits be supervised.

## DISPOSITION

The visitation component of the exit order as it relates to father's visitation in the event he is transferred to a correctional facility other than the facility in Jamestown, California, is stricken.  In all other respects, the orders of the juvenile court are affirmed.


                                                                       _____/s/_____

                                                                   RAYE, P. J.


We concur:


_____/s/_____
BLEASE, J.


_____/s/_____
MAURO, J.


14