Filed 9/4/20  In re Kash P. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re KASH P. et al., Persons Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGNECY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ZAVIER P., <br><br> Defendant and Appellant. | F080910 <br><br> (Super. Ct. Nos. 18JP-00103-A, 18JP-00103-B) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

James N. Fincher, County Counsel, and Jennifer Trimble, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P.J., Meehan, J. and DeSantos, J.

Zavier P. (father) appeals from an order terminating his parental rights under Welfare and Institutions Code section 366.26[1] to his sons, Kash P. and Zavier P., Jr., now 10 and 9 years of age, respectively. He sought writ review of the juvenile court's order setting the section 366.26 hearing (Cal. Rules of Court, rules 8.450–8.452), claiming trial counsel was ineffective. We denied his writ petition.[2]

On appeal, father contends the Merced County Human Services Agency (the agency) failed to comply with the juvenile court's visitation order thereby preventing him from establishing the beneficial parent-child relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) and violating his right to due process. The exception requires a parent to establish that he maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. (*Ibid.*) Respondent contends father forfeited any claim of error by failing to raise it in the juvenile court. We concur and affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In August 2018, the agency assisted in the removal of then eight-year-old Kash, seven-year-old Zavier and their 10-year-old cousin after sheriff's deputies served a search warrant for a marijuana grow on the property of their mother's cousin, Alejandro, the 10-year-old's father. In searching the residence, the deputies found a butane "honey oil" lab, weapons and the three children. Alejandro told the deputies his son was in the house but refused to open the door, forcing the deputies to kick the door in. They also forced their way into the locked master bedroom where they found three assault rifles, a ballistic vest and a loaded shotgun. The children were in another locked bedroom, which they exited

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]     *Zavier P. v. Superior Court* (Dec. 24, 2019, F080088) [nonpub. opn.]. On our own motion, we take judicial notice of the record on appeal filed in *Zavier P.*, as well as our opinion in that case. (Evid. Code, §§ 452, subd. (d); 459.)

and were led outside. The children's mother, E.G. (mother), arrived shortly after the deputies cleared and searched the residence. She and her sons lived on Alejandro's two-acre property in a trailer behind his house.

The deputies found approximately 20 pounds of processed ready-for-conversion marijuana on the property along with eight pounds of marijuana buds and three outdoor 12-foot marijuana plants. Remnants of a butane honey oil lab, including butane canisters, butane collection vessels, marijuana extraction tubes and other items used for the extraction of honey oil, were found in a hallway bathroom. Eight open butane cans were located throughout the living room, bedroom, kitchen and bathroom, all accessible to the children. According to one of the sergeants, butane is a highly explosive gas and only required a small amount to cause an explosion. He pointed out butane cans that were about 10 feet from an exposed water heater, explaining that an explosion in the home would have been fatal. One of the deputies located children's bath toys, toothbrushes and other items that led him to believe the children frequented the home. Social workers detected a heavy odor of marijuana in the home and observed marijuana debris strewn throughout. The children were belligerent and refused to be interviewed by the social worker, stating mother instructed them not to talk.

Mother denied ever being in the home but admitted knowing about the marijuana grow in the back of the property. She said she did not allow the children to visit their cousin. She only allowed them in the residence on this occasion because she was going to the store. If she had known what was in the home, she would not have allowed them to be there. The cousin, however, said the children visited him often and played video games in his room. Mother later admitted being in the home but said she never saw anything of concern.

The agency took the children into protective custody and placed them with a non-relative in Solano County. The agency filed a petition on their behalf, alleging under section 300, subdivision (b)(1) mother willfully or negligently endangered them by

3.

allowing them to visit Alejandro's home and thereby exposed them to weapons, butane cans and a marijuana grow. It further alleged under subdivision (b)(1) father was incarcerated and unavailable to protect them and provide them care or support pursuant to section 300, subdivision (g). He was serving a life sentence for second degree murder.

The juvenile court ordered the children detained pursuant to the petition and set a combined hearing on jurisdiction and disposition (combined hearing). The agency recommended the juvenile court remove the children from mother's custody and provide her reunification services. The agency recommended the court deny father reunification services because of his felony conviction. (§ 361.5, subd. (b)(12).)

The juvenile court convened the combined hearing in September 2018. Father appeared in custody and the court appointed an attorney for him. The court continued the hearing to September 26, 2018, to allow additional time for the agency to file its report. Father's attorney asked that father be returned to the Department of Corrections and appear via court call on September 26. The court approved the request.

On September 26, 2018, mother's attorney requested a contested hearing, which the juvenile court set for October 30. Father was not present but was represented by his attorney who waived his appearance by court call because the matter was not being set for a section 366.26 hearing but rather a contested hearing.

Father appeared in custody with his attorney at the combined, contested hearing on October 30, 2018, but did not present any evidence. By that time, mother had relocated to Solano County and the agency recommended the court transfer the case.

Mother testified she and Alejandro no longer lived on the property where the weapons and marijuana were found, and she did not live with Alejandro. She explained his property was completely fenced off by a tall wooden fence. To get to his property, she had to enter by a chain-link gate that was locked when he was not home. Her trailer was approximately three car lengths from his house. The children could only go to the house with permission to see their cousin, but they had not gone there since mid-summer

4.

because the cousin left. She and Alejandro had a tenant/landlord relationship, so she did not go to his house often. However, he was going through a divorce, so she was helping him clean and checking on him. She was in his house 10 minutes prior to the search to drop the children off. They entered the house from a back door leading to the kitchen and from there walked straight back to the cousin's bedroom. She did not see anything in the kitchen except some things Alejandro's wife had packed to take with her. She denied any knowledge of butane canisters, weapons or honey oil equipment and did not have a key to the master bedroom. She claimed the children returned to their trailer to use the bathroom instead of using the one in the house.

The juvenile court sustained the section 300, subdivisions (b)(1) and (g) allegations, ordered the children removed from mother's custody, ordered reunification services for her and denied services to father as recommended by the agency. The court ordered monthly visitation for mother but no visitation for father. The court ordered the case transferred to Solano County but accepted it back after it was determined mother was residing in Merced County. The court set a six-month review for May 28, 2019.

In April 2019, the agency filed a modification petition (section 388 petition), asking the juvenile court to suspend mother's visitation and order her to complete a psychological evaluation because of her increasingly erratic behavior. She took the children from school without authorization and was arrested for kidnapping. The court granted the agency's petition and appointed mother a guardian ad litem.

Mother declined to be transported for the May 28, 2019 hearing, claiming the juvenile court did not have jurisdiction over her. Father's attorney told the court she spoke to father on May 23, 2019, and he requested telephone contact with the children. He said he had been talking to them on their cell phones. Father's attorney also asked the court to place the children with their paternal grandmother. The court approved reasonable telephone contact between father and the children as the agency deemed it to

be in the children's best interest. The court set the 12-month review hearing for September 25, 2019.

In July 2019, the agency filed a section 388 petition asking the juvenile court to terminate mother's reunification services based on the opinions of two psychologists that she would not benefit from reunification services. Mother opposed the agency's petition and requested a contested hearing.

In September 2019, the juvenile court granted the agency's section 388 petition and terminated mother's reunification services. Neither she nor father personally appeared. The court vacated the review hearing scheduled for September 25 and set a section 366.26 hearing. Only father sought writ relief.

The agency recommended the juvenile court find the children were likely to be adopted and terminate parental rights at the section 366.26 hearing. The children were placed with maternal relatives and doing well there. The maternal relatives wanted to adopt the children and were applying for approval. The children said they were happy in their relatives' home and liked the idea of being adopted.

Mother's visits remained suspended and father had not contacted the social worker to request any kind of contact. The social worker tried to contact father at the prison to get a statement from him but no one answered the phone and there was not an option to leave a voicemail. She sent him a letter requesting a statement for the hearing but did not receive a response prior to submitting the report. The agency was aware, however, that he did not approve of the children being adopted.

Father wrote a letter to the social worker on December 26, 2019, stating he last spoke to the children in April 2019. Although he wanted the children placed with his family, he did not object to the current maternal relatives having legal guardianship of the children as long as he could have contact with them. He was going back to court soon to have his sentence mitigated.

Father testified at the section 366.26 hearing on February 18, 2020. He lived with the children until he was incarcerated in 2012. Kash was two years old and Zavier was 18 months old when father was taken into custody. He visited them weekly and talked to them by telephone every day while in jail. He was transferred to High Desert Prison in Susanville and not able to visit them in person but continued to have telephone visits with them. He resumed in-person visitation with the children at Deuel Vocational Institution where the paternal grandmother took them to visit. Father's last in-person visit with the children was in 2017. He continued to have telephone contact with the children and last spoke to them on Kash's birthday in April 2019. He had not had any contact with the children, including telephone contact, letters or cards, since they were placed with their maternal relatives. He did not object to their placement; he just wanted to maintain contact with them. If his parental rights were terminated, he was afraid all contact would be severed.

Father testified he was originally sentenced to 40 years in prison but his sentence was reduced to 25 years. He hoped it would be reduced to 15 years. He was aware none of his relatives followed through with the application process for placement.

Father's attorney argued the juvenile court should apply the beneficial parent-child relationship exception to adoption because father maintained regular contact with the children prior to their placement with their maternal relatives and it would benefit them to continue their relationship with him.

The juvenile court found by clear and convincing evidence the children were likely to be adopted and that father's contact was inconsistent in that he had not had in-person contact with them since 2017. The court also found that the benefit of maintaining the parent-child relationship did not outweigh the benefit the children would receive from being adopted into a stable home and terminated parental rights.

**DISCUSSION**

I.     Legal Principles

     *A. Visitation*

"Visitation is a critical component, probably the most critical component, of a reunification plan." (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1113–1114.) "Without visitation of some sort, it is virtually impossible for a parent to achieve reunification." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491–1492.) "The absence of visitation will not only prejudice a parent's interests at a section 366.26 hearing but may 'virtually assure[ ] the erosion (and termination) of any meaningful relationship' between [parent] and child." (*In re Monica C.* (1995) 31 Cal.App.4th 296, 307.)

To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A).) Visitation requirements exist "[i]n order to maintain ties between the parent … and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent." (*Id.*, subd. (a).)

In the dependency context, visitation is also a critical component in the constitutionality of the procedures used for termination of parental rights. "The Supreme Court has held the statutory procedures used for termination of parental rights satisfy due process requirements only because of the demanding requirements and multiple safeguards built into the dependency scheme at the early stages of the process. [Citations.] If a parent is denied those safeguards through no fault of [his] own, [his] due process rights are compromised. Meaningful visitation is pivotal to the parent-child relationship, even after reunification services are terminated." (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1504.)

"Once visitation is ordered, the court may delegate responsibility for managing details such as the time, place and manner of visits, none of which affect a parent's defined right to see his or her child. [Citations.] However, the visitation order must give

some indication of how often visitation should occur. [Citations.] A court may not abdicate its discretion to determine whether visitation will occur to a third party." (*In re E.T.* (2013) 217 Cal.App.4th 426, 439.) A visitation order granting a third party complete and total discretion to determine whether visitation occurs at all is improper. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237.)

After reunification services are ordered terminated, "the focus shifts to the needs of the child for permanency and stability." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) By the time a section 366.26 hearing is set, parental unfitness is so well established that there is no longer reason for the juvenile court to believe that a nurturing parent-child relationship exists and the focus shifts to the needs of the child for permanency and stability. (*Id.* at p. 309.) The court need not consider the possibility of family reunification unless the parent demonstrates changed circumstances sufficient to revive the issue. (*Ibid*.)

The purpose of ongoing visitation pending the section 366.26 hearing is twofold: to protect the parent's substantive due process rights by holding open an escape mechanism under section 388 to avoid termination of parental rights[3] and to establish the beneficial parent-child relationship exception to adoption. If visitation is denied, it is a foregone conclusion the parent will not be able to establish the exception. (*In re Hunter S.*, *supra*, 142 Cal.App.4th at pp. 1504–1505.)

*B. Beneficial Parent-Child Relationship Exception to Adoption*

" 'A section 366.26 hearing … is a hearing specifically designed to select and implement a permanent plan for the child.' [Citation.] It is designed to protect children's 'compelling rights … to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] 'The

---

[3] Section 388 allows interested parties to petition for a hearing to change or set aside a prior court order on the grounds of "change of circumstance or new evidence." (§ 388, subd. (a)(1).)

Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 52–53.)

If the juvenile court determines it is likely the child will be adopted, the statute mandates termination of parental rights unless the parent opposing termination can demonstrate that one of the statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B).) "Moreover, '[b]ecause a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement.' " (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 646 (*Breanna S.*).)

Father contends he was prevented from asserting the beneficial parent-child relationship exception, which pertains where the evidence supports "a compelling reason for determining that termination would be detrimental to the child [because the parent maintained] … [¶] … regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) " 'To trigger the application of the parental relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination.' [Citation.] A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." ' " (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.)

The nature of the relationship between the parent and child is key in determining the existence of a beneficial parent-child relationship; it is not sufficient to show that the child derives some benefit from the relationship or shares some " 'emotional bond' " with the parent. (*In re K.P.* (2012) 203 Cal.App.4th 614, 621.) "To meet the burden of

10.

proving the section 366.26, subdivision (c)(1)(B)(i) exception[,] the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits—the parent must show that he or she occupies a parental role in the life of the child." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527.)

"To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) The juvenile court's decision that a parent has not satisfied this burden may be based on either or both of two component determinations—whether a beneficial parental relationship exists and whether the existence of that relationship constitutes "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).)

### C.  Standard of Review

When the juvenile court finds the parent has not met his or her burden of producing evidence establishing the existence of the beneficial parent-child relationship, our review is limited to determining whether the evidence compels a finding in favor of the parent on this issue as a matter of law. (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528; *Breanna S.*, *supra*, 8 Cal.App.5th at p. 647.) "When the juvenile court concludes the benefit to the child derived from preserving parental rights is not sufficiently compelling to outweigh the benefit achieved by the permanency of adoption, we review that determination for abuse of discretion." (*Breanna S.*, at p. 647; see *In re K.P.*, *supra*, 203 Cal.App.4th at pp. 621–622.)

### D.  Forfeiture

Issues regarding visitation in dependency proceedings are forfeited on appeal by failure to raise the issue or to object in the juvenile court. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685–686.) "The purpose of this rule is to encourage parties

11.

to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 961–962.)

II.     Analysis

The only visitation order issued for father during these proceedings was the order issued in May 2019 for reasonable telephone visitation. Father does not argue that the order as written was an unlawful delegation of authority to the agency to determine if visitation would occur. Instead, he contends the agency did not arrange telephone visitation as ordered.

The record reflects that after the social worker's attempts to reach father at the prison were unsuccessful, the social worker wrote him a letter. He did not respond, however, until late December 2019. Although he mentioned in his letter that he had not spoken to his sons since April 2019, he did not raise the issue of the agency's compliance in executing the visitation order before the juvenile court. Consequently, he forfeited the right to assign error on appeal. Further, even if the doctrine of forfeiture did not apply, we would reject father's claim the court violated his due process right to assert the beneficial parent-child relationship exception to adoption.

As explained above, proof the beneficial parent-child relationship exception exists requires much more than regular visitation and contact. A parent must also prove that he or she occupies a parental role in the life of the child. Here, Kash and Zavier had spent the majority of their lives physically separated from father. They were infants in 2012 when he was arrested and incarcerated. Over the ensuing five years, the most direct contact they had with him were brief visits within the confines of a penal institution. Their subsequent contact with him until April 2019 was primarily by telephone. By the hearing in February 2020, they had had no contact with him for nearly a year. With so little contact for that length of time, there is simply no way father could develop or maintain a parental role in the lives of his children no matter how loving the relationship.

12.

Consequently, father fails to show the juvenile court was compelled to find the beneficial parent-child relationship existed between him and the children as a matter of law. Further, even assuming there was sufficient detriment to trigger the exception, the benefit of adoption outweighed the benefit of maintaining the parent-child relationship. The children were well cared for and loved in a stable environment and they were in favor of being adopted by their caregivers.

Our conclusion father failed to establish the beneficial parent-child relationship exception disposes of his claim the agency violated his due process right by not complying with the visitation order. In order to establish a due process violation, father would have to show the agency's noncompliance was error beyond a reasonable doubt. (*In re Dolly D*. (1995) 41 Cal.App.4th 440, 446.) Since the exception to adoption was never available to him, father's prejudice claim must also fail.

**DISPOSITION**

The order is affirmed.