207 Cal.App.3d 1227 (1989)
255 Cal. Rptr. 344
In re DANIELLE W. et al., Persons Coming Under the Juvenile Court Law.
KATHLEEN WEILER, Plaintiff and Appellant,
v.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Defendant and Respondent.
Docket No. B029922.
Court of Appeals of California, Second District, Division Three.
February 10, 1989.
*1229 COUNSEL
John F.M. Rodriguez, under appointment by the Court of Appeal, for Plaintiff and Appellant.
*1230 De Witt W. Clinton, County Counsel, Sterling Honea and Joe Ben Hudgens, Deputy County Counsel, for Defendant and Respondent.
OPINION
ARABIAN, J. 

INTRODUCTION
Plaintiff and appellant Kathleen Weiler (appellant) appeals from the visitation portion of the disposition order of the juvenile court in the matter of her minor daughters Danielle W. and Dasha W.[1] Appellant contends that the order delegated all control over visitation to the social worker and the minors and therefore was an abuse of discretion, a denial of due process, an unauthorized delegation of judicial power, and an extrajurisdictional act. She also contends that there was insufficient evidence to support the visitation order. We find that the order was proper and therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On July 29, 1986, twelve-year-old Danielle W. and six-year-old Dasha W. were adjudged dependent children of the juvenile court under Welfare and Institutions Code section 300, subdivisions (a) and (d), and were ordered to remain detained in the home of their sister, Doreen Koch. The juvenile court found these minor girls had been left without adequate supervision, had been sexually molested by their 18-year-old stepfather and had been exposed to sexual acts, as well as violence, between their mother and the stepfather. Also the minors' three older sisters had been sexually molested by their mother's previous live-in boyfriends, all with the knowledge of their mother who failed to protect them.[2]
*1231 The facts underlying the petition were not in dispute at trial, and the jurisdictional issue was tried on the preadjudication social study report of the department of children's services (the Department or DCS) and police reports. According to the social study, appellant, 44 years old, was the mother of 5 daughters. The three oldest daughters  Donna, Deborah and Doreen  were by appellant's first husband to whom she was married for eleven years. After her divorce, the three daughters remained in appellant's home. According to appellant, Danielle was fathered by a man who lived with her for about a month, although he denied paternity. Dasha's father was a man with whom appellant had a "casual" relationship.
Appellant married Ruben Murillo in April 1984 after he had lived in her home for about three months. At the time, appellant was 39 and Ruben was 17 years old. Appellant, Ruben, Danielle and Dasha all resided in a one-bedroom apartment. The girls were left with Ruben in the evenings while appellant was at work as a waitress. Danielle related that Ruben had molested her and Dasha for several months in 1985 and that when she told her mother, appellant told her not to tell anyone. The minors were present in the same bedroom when appellant and Ruben had sexual relations. They also witnessed Ruben's violence toward appellant. Ruben took drugs and drank. He moved out of the home in November 1985 after some instances of violence toward appellant, and she subsequently filed for divorce.
Two of appellant's three older daughters reported being molested by appellant's boyfriends when they were younger. When appellant became pregnant with Dasha, she had Doreen, then 16 years old, agree to aid in caring for Dasha by threatening to have an abortion.
Danielle and Dasha did not wish to see or speak with their mother.
According to police reports, a children's services worker, responding to a complaint, found Danielle and Dasha alone in the apartment at 9 p.m. on March 18, 1986. Danielle related to a police officer how Ruben had molested her and that she told her mother, but that she felt her mother "didn't care." There had been earlier investigations of reports that appellant was leaving the minors alone as well as an investigation of molestation.
At the disposition hearing on November 20, 1986, appellant testified and called four other witnesses. A partner in the law firm which had employed *1232 appellant as a receptionist during the previous seven or eight months testified that she performed her work "exceptionally well," and that her working relationship with the office personnel was excellent. Dr. Brennerman, a psychiatrist, testified that she had been seeing appellant for family counseling and depression for one hour every other week since April 1986. She recommended joint therapy for appellant, Danielle and Dasha. Dr. Brennerman also recommended that Dasha return to appellant's custody, unless Dasha objected. If the court were to decide not to return Dasha to appellant's custody, Dr. Brennerman recommended unsupervised visits, probably even if Dasha objected. However, Dr. Brennerman had not spoken with either minor, the social worker, or any of the other relatives, and was not aware that there was evidence that appellant's older daughters had also been molested by appellant's boyfriends. Also, she had not reviewed the medical records, including the psychologist's report.
Appellant's daughter, Deborah, testified that she would be able to take care of Danielle and Dasha if the court were to place them with her. She resided in a one-bedroom apartment with her two children and appellant, but would move to a larger apartment.
Doreen's husband testified that while the minors had been in Doreen's and his home appellant continually harassed them with phone calls, visits and drive-bys. He stated that they did not give the children letters sent by appellant and did not give them packages she left, unless the children chose to accept the gift. He reported that the children were generally upset when telephone messages and packages arrived and it took them a couple of hours to calm down.
During the disposition hearing, the judge, appellant's attorney, and counsel for the minors and Department interviewed the children without the presence of a reporter. In response to the judge's questions, each child individually stated that she did not wish to live with her mother and she did not wish to visit with her.
Appellant testified that she was looking forward to counseling together with Danielle and Dasha to start some sort of reunification. She understood that her children were angry "for good cause." "They have been molested by somebody who had no business being in my household in the first place." She acknowledged that she gave her attention to "that man" "that rightfully belonged to my children," and described it as "extremely unusual behavior for me." She testified that Doreen was an excellent caretaker.
At the conclusion of the disposition hearing, the juvenile court found that reasonable efforts had been made to prevent or eliminate the need for *1233 removal of the minors from their home and make it possible for them to return there. The court ordered the children to remain as suitably placed and ordered that appellant could not come within one city block of the minors. "All contact between the minors must go through the [Children's Services worker]...." In regard to visitation by appellant, the juvenile court ordered, "Visitation will be at DCS's discretion and the children's discretion. [¶] I am not going to force them to visit when they don't want to. But whenever they want to, it can be at a location selected by the Department of Children's Services, which should be designed to accommodate both the mother and the children. [¶] And it should be a site where the Department of Children's Services should consider the convenience of all the parties."[3]
Appellant's appeal challenges the propriety of the visitation order only.

ISSUES
1. Does the visitation order constitute a delegation of judicial powers in violation of the constitutional requirement of separation of powers (Cal. Const., art. III, § 3)?
2. Does the visitation order deny appellant due process?
3. Was the visitation order supported by substantial evidence?

DISCUSSION
Appellant asserts that the juvenile court delegated to the social worker and the minors all control over visitation and contends that such delegation was an abuse of discretion, a due process denial, an unauthorized delegation of judicial power and an extrajurisdictional act.
In considering these contentions, we first observe that appellant mischaracterizes the juvenile court's visitation order: the juvenile court did not delegate all control over visitation. The juvenile court, rather than ordering no visitation at all (despite evidence to support a finding that visitation by appellant would be detrimental to and not in the best interests of the children), ordered visitation under specific conditions. We examine appellant's contentions as they may arguably apply to the order of the juvenile court as actually rendered.

*1234 1. The Role of the County Department of Children's Services in Juvenile Dependency Proceedings

The purpose of the Juvenile Court Law (Wel. & Inst. Code, § 200 et seq.)[4] "is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. When the minor is removed from his or her own family, it is the purpose of this [law] to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. [The law] shall be liberally construed to carry out these purposes." (§ 202, subd. (a).)
The law establishes a juvenile court and provides for the exercise of jurisdiction by that court over dependent children. (§ 300.) The juvenile law system envisions a cooperative effort between the probation officer and the juvenile court. Unless waived by the probation officer, the judge or referee, and the minor, the probation officer must be present in court to represent the interests of the minor in all proceedings and "to furnish to the court such information and assistance as the court may require." (§ 280.) It is the probation officer's duty to prepare a social study report for disposition hearings, which includes a recommendation for the disposition of the case. (Ibid.) By statute, the juvenile court is authorized to receive and consider the probation officer's report. (§ 281.) The status of a dependent child is reviewed periodically as determined by the court, but no less frequently than once every six months until completion of a permanency planning hearing. (See §§ 364, subds. (a) and (b), 366.)
The county board of supervisors is empowered to delegate to the county welfare department all or part of the duties of the probation officer, including specified duties concerning dependent children. (§§ 272, 300, 306.) "Probation Officer" as used in section 300 proceedings includes any social worker in the county agency designated by the board. (Cal. Rules of Court, rule 1302(a)(7).)
The Department, which is acting as the probation officer, acts as an arm of the court in the best interests of the minor. (In re Steven C. (1970) 9 Cal. App.3d 255, 265 [88 Cal. Rptr. 97] [held that no prejudicial error in allowing probation officer to conduct the case against defendant in adjudicating him a ward of the juvenile court for committing an assault with a *1235 deadly weapon].) Pursuant to statutory authority it acts "as a representative of the state which stands in loco parentis to the minor in a proceeding whose primary consideration is the minor's welfare. (See In re Florance, 47 Cal.2d 25, 28 [].)" (Id., at p. 264.)
Because Danielle and Dasha were sexually molested by their stepfather, they were properly taken from the physical custody of their mother pursuant to section 361, subdivision (b)(4).[5] When the juvenile court orders removal of the child pursuant to section 361, as was done in this case, the juvenile court is required to order "the care, custody, control and conduct of the minor to be under the supervision of the probation officer who may place the minor in any [of certain specified alternatives, including] (1) the home of a relative...." (§ 361.2, subd. (b).)
(1) It was within the Department's role as a representative of the state and as an arm of the court, as empowered by the Legislature, to exercise limited discretion in the administration of the juvenile court's visitation order.

2. Separation of Powers

Article III, section 3, of the state Constitution provides, "The powers of state government are legislative, executive and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."
(2) Judicial power is in the courts and their function is to declare the law and determine the rights of parties to a controversy before the court. (Marin Water etc. Co. v. Railroad Com. (1916) 171 Cal. 706, 711 [154 P. 864].) Executive or administrative officers cannot exercise or interfere with judicial powers. (See Boags v. Municipal Court (1987) 197 Cal. App.3d 65, 67 [242 Cal. Rptr. 681].)[6]
*1236 However, with the growth of administrative law, the strict doctrine that judicial powers cannot be delegated has been modified. A nonjudicial board or officer may be authorized to perform "quasi-judicial" powers to determine facts and exercise discretion. (See 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 113, p. 166.) (3) Separation of powers does not mean an entire or complete separation of powers or functions, which would be impracticable, if not impossible. (See, e.g., Laisne v. Cal. St. Bd. of Optometry (1942) 19 Cal.2d 831, 835 [123 P.2d 457]; People v. Strong (1931) 114 Cal. App. 522, 528 [300 P. 84].) "When one department or agency thereof exercises the complete power that has been by the Constitution expressly limited to another, then such action violates the implied mandate of the Constitution." (Laisne v. Cal. St. Bd. of Optometry, supra, at p. 835, italics added.)
"The correct principle deducible from the better-reasoned cases dealing with the separation of powers seem to be that even the primary function of any of the three departments may be exercised by any other governmental department or agency so long as (1) the exercise thereof is incidental or subsidiary to a function or power otherwise properly exercised by such department or agency, and (2) the department to which the function so exercised is primary retains some sort of ultimate control over its exercise, as by court review in the case of the exercise of a power judicial in nature." (13 Cal.Jur.3d, Constitutional Law, § 91, p. 168.)
For example, in People v. Sanders (1929) 102 Cal. App. 237 [283 P. 136], it was held that the legislative grant of authority to the district attorney to amend an information to include charges not designated in the commitment was not an unconstitutional delegation of judicial power to a ministerial officer. "There is abundant authority in California giving support to legislation that vests in a legislative body, or administrative officer, judicial functions, when such acts are merely incidental to the performance of a legislative or executive function. The cases are not uniform in fixing the line of demarcation between the valid grant of such authority, and legislation which improperly intrudes upon judicial functions which are by the Constitution reserved to the judicial branch of the government. There is authority, however, for the general rule that where the judicial act authorized is merely incidental to the main function of the legislative body, or administrative office, the grant is not void because of constitutional limitations. In fact, the *1237 exercise of this incidental judicial power by administrative officers and municipal bodies has become so common that citation of authority seems hardly necessary." (Id., at pp. 247-248, italics added.)
(4) Accordingly, we find that the visitation order does not represent an improper delegation of judicial power. First, there is no delegation of judicial power to the children even though the order states in part that visitation is at the discretion of the minors. In the context of this case, this means the children should not be forced to visit with their mother against their will and in no way suggests that the minors are authorized to do more than express their desires in this regard. Second, the order simply authorizes the Department to administer the details of visitation, as specified by the court. Although the order grants the Department some discretion to determine whether a specific proposed visit would be in the best interests of the child, the dominant factor in the exercise of that discretion is the desire of the child to visit the mother.
The nature of the task of the juvenile court system in responding to the rapidly changing and complex family situations which arise in dependency proceedings and the interests of judicial economy require the delegation of some quasi-adjudicatory powers to a member of the executive branch dedicated to the dependent child's welfare. As long as that role is limited and subject to supervision, as it was here, there is no violation of the separation of powers doctrine.
We point out, however, that a visitation order granting the Department complete and total discretion to determine whether or not visitation occurs would be invalid. We feel compelled to express our concern regarding the juvenile court minute order form employed by the court which seems to encourage such an order by presenting a box to be checked ordering, "visitation in the discretion of DPSS." The juvenile court must first determine whether or not visitation should occur, as was done here, and then provide the Department with guidelines as to the prerequisites of visitation or any limitations or required circumstances.[7]

3. There Is No Due Process Violation

(5) Appellant also contends that the order violated her right to due process. She asserts that the juvenile court established no means to review the decision of the social worker and the minor, no guidelines to control their exercise of power, and no way for the mother to play any part in visitation decisions.
*1238 Appellant's contention is meritless. As explained above, the order was limited and subject to periodic review by the court. Appellant was not prevented from communication with the Department and the social workers. Furthermore, a parent may petition the court for modification of any order upon grounds of change of circumstances or new evidence. (§ 388.) Thus, the appellant could bring to the attention of the juvenile court any difficulties encountered with the Department's administration of the visitation order or inform the court of matters which would justify a change in the order.
The parole officer or Department is charged with the burden of representing the state in seeking the best interests of the child. To the extent that its role may become adverse to the parent's interests, it of course must take care not to abuse its limited authority. As administrator of the court's order, the parole officer or Department is subject to the supervision of the juvenile court which provides the parent with the required due process. The law demands no more nor less under this hybrid responsibility.

4. Substantial Evidence Supports the Visitation Order

(6) Appellant contends that the conditions giving rise to the juvenile court's order had abated in that the molester, Ruben Murillo, was absent from the home and there was no risk of his having contact with the minors. Appellant also points out that she was not suspected of violence or sexual abuse and that there was no evidence of substance abuse. She argues, "It is hard to conjure conditions under which the minors could have been adversely affected by monitored visitation with the mother." She also suggests that there was no evidence that Dasha feared her mother, only that she was traumatized by her neglect, and that, under monitored and limited visitation, appellant could not subvert the caretakers' role or exert an adverse influence on the minors.
Appellant's position ignores the dominant concern of the juvenile court, the possibility of adverse psychological consequences of an unwanted visit between mother and child. There is substantial evidence in the record that Danielle and Dasha felt, with ample reason, neglected, unloved, distrustful of, and even angry at their mother. Thus, it was reasonable for the juvenile court to believe, under the circumstances of this case, that forced contact would not be beneficial. In considering the best interests of the child, while still recognizing parental visitation rights, the juvenile court did in fact order visitation, under the one circumstance that would offer the best possibility that such visitation would be beneficial  when the child desired such *1239 contact. The order does not constitute punishment of the parent but rather protection of the minor's psychological well-being.[8]

DISPOSITION
Order affirmed.
Danielson, Acting P.J., and Croskey, J., concurred.
Appellant's petition for review by the Supreme Court was denied May 3, 1989.
NOTES
[1] The minors' last names are not Weiler. As Danielle has been returned to appellant's custody, the appeal of the order in regard to Danielle has been rendered moot. (City of Los Angeles v. County of Los Angeles (1983) 147 Cal. App.3d 952, 958 [195 Cal. Rptr. 465].)
[2] The juvenile court found the allegations of the dependency petition to be true. The allegations of the petition were as follows: "Count I: On or about March 18, 1986, and on prior occasions, these minors were left without adequate supervision. Minors are of such an age to be unable to properly care for themselves. Count II: During 1985, minors were sexually molested by Ruben Murillo. Further, minors were exposed to sexual activity between their mother [appellant] and Ruben Murillo. Further, minors['] adult sisters, Donna, twenty-five, and Doreen, twenty-two, were previously molested by mother[']s live-in boyfriends while residing in the home of their mother. Minors['] mother became aware of said molestations and failed to take appropriate actions to protect minors. Count III: Minors were periodically exposed to violent confrontation between their mother and Ruben Murillo, during which Ruben Murillo physically abused minors['] mother. Said violence endangered minors['] safety. Paragraph II, Subdivision D. The home of said minor is an unfit place for said minor by reason of the neglect of mother, Kathleen Murillo, and depravity of the stepfather, Ruben Murillo, for the following reasons: The facts as set forth in Paragraph A above are hereby incorporated and made part hereof."
[3] The order is reflected in the juvenile court form disposition-minute order by an "x" in the box before the statement, "Visitation/monitored visitation in the discretion of DPSS," with the words "Visitation/monitored" crossed out and the words "and minors" added, to read, "Visitation in the discretion of DPSS and minors."
[4] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[5] Appellant does not challenge the finding of dependency.

Section 361, subdivision (b)(4) provides:
"(b) No dependent child shall be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated unless the juvenile court finds clear and convincing evidence of any of the following:
".... .... .... .... .... . .
"(4) The minor has been sexually abused by a parent, guardian, or member of his or her household or other person known to his or her parent and there are no reasonable means by which the minor can be protected from further sexual abuse without removing the minor from his or her parent or guardian or the minor does not wish to return to his or her parent or guardian."
[6] The separation of powers requirement does not apply to local county and municipal governments. However, the county social service agencies, which are delegated the power to act as probation officers (§ 272) are performing powers of the state executive branch and are subject to the administration, supervision and regulation of the State Department of Social Services. (§ 202.5.) The entire judicial power of the state is vested in the constitutional courts (Cal. Const., art. VI, § 1) and the Legislature may not give judicial powers to any state board or tribunal. (Department of Public Works v. Superior Court (1925) 197 Cal. 215 [239 P. 1076].) The juvenile court as a branch of the superior court is a statewide judicial entity. (§ 245.)
[7] In this regard, we recommend that the juvenile court form in question be reviewed in light of the opinion expressed herein.
[8] We also observe that such an order may also be beneficial to appellant and constitute a reasonable way to preserve the family's chances for reunification. The fact that Danielle has been returned to her mother's custody suggests that, in fact, the visitation order did not undermine appellant's interest in reunification.