Filed 7/31/13  In re Karen H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KAREN H. et al., Persons Coming Under the Juvenile Court Law. | |
| | D063611 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14669A-B) |
| v. | |
| ADRIANA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Adriana G. seeks review of juvenile court orders expanding her children's visitation with their father, A.H., at the six-month status review hearing. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Karen H. and K.H. (together, the children) are the teenage daughters of A.H. and Adriana. A.H. and Adriana separated in December 2008, after A.H. learned that Adriana had a boyfriend. After the separation, Karen and K.H. lived with their father.

In June 2012, the San Diego County Health and Human Services Agency (Agency) investigated an allegation that mother's boyfriend, Ignacio V., had sexually abused K.H., who was then 13 years old. K.H. said Ignacio had touched her on her hip and chest several years earlier while her mother was at the store. When asked if anyone else had touched her, K.H. reported that her father had fondled her buttocks, breast area and vagina, and penetrated her rectum with his finger. According to K.H., her father was intoxicated and did not respond to her requests to stop. K.H. said her father often drank, and she was afraid of him when he was drinking.

Karen said her father physically disciplined her and K.H., leaving bruises. He hit her and K.H. with a belt. Karen was worried about her father's daily drinking. She was afraid of him when he drank. Karen denied any sexual abuse.

When the social worker informed A.H. about K.H.'s disclosures, A.H. did not deny any sexual abuse. During a later interview, A.H. tearfully acknowledged he had a drinking problem that affected his judgment and ability to control his anger. He said

2

there were two times he was intoxicated to the point he could not remember his actions. It was possible he may have inappropriately touched K.H. on those occasions.

Adriana said she separated from A.H. after he was arrested for domestic violence. Karen wanted to live with him. K.H. remained with Adriana. In approximately 2010, A.H. refused to return K.H. after a visit, stating "she had said things about Ignacio." A.H. asserted he had proof that Ignacio inappropriately touched K.H. When Adriana confronted him, Ignacio denied the allegations. Adriana said that during her marriage to A.H., on separate occasions when he was drinking, A.H. inappropriately touched three of her female relatives, fondling the buttocks of two of the women and kissing a third woman, who was developmentally disabled.

At the June 25, 2012, detention hearing, the court detained the children in protective custody and ordered A.H. to have no contact with K.H. The court authorized A.H. to have liberal, supervised visitation with Karen. On August 29, the court adjudicated the children dependents of the juvenile court, removed them from parental custody and ordered a plan of family reunification services for each parent.

A.H. enrolled in substance abuse treatment and consistently attended the treatment program and 12-step meetings. He successfully completed the first part of his substance abuse treatment and a parenting program. A.H. enrolled in sex offender treatment on February 1, 2013. He said that because of his work schedule and lack of transportation, he had to delay attending sex offender treatment until he no longer was required to attend as many substance abuse treatment meetings.

3

Karen was diagnosed with posttraumatic stress syndrome. She was making progress in treatment and increasing her coping skills. K.H. presented with symptoms of trauma and had difficulty expressing her wishes. In addition, she had serious cognitive and emotional impairments that would require long-term therapy and educational support services.

The six-month status review hearing was held on March 14, 2013. The Agency recommended the court expand A.H.'s visitation with Karen and lift the no-contact order with K.H. Adriana objected to any changes in visitation. Minors' counsel said the children requested increased visitation with A.H. As their guardian ad litem, she was in agreement with the expanded visitation orders.

The juvenile court rejected A.H.'s argument Adriana did not have standing to challenge his visitation orders and asked her to submit an offer of proof as to the risks to the children from changing the visitation plan. In response, Adriana said she did not believe A.H. would be protective and it was too soon to allow the children to have additional contact with their father. She did not have any additional evidence to present.

The court said it did not wish to minimize Adriana's concerns. However, her offer of proof, even if established at trial, would not show that expanded visitation would jeopardize the safety of the children. Visitation was a necessary component of A.H.'s reunification case plan. The court modified the visitation order to allow A.H. to have short, unsupervised visits with Karen in a public place and gave the Agency the discretion to expand daytime visits with the concurrence of minors' counsel. The issue of

4

overnight visits would have to be set for a special hearing. The court lifted the no-contact order between A.H. and K.H. and ordered supervised visits to take place. The court stated it was not authorizing any expansion of visits between A.H. and K.H. without further hearing. The court found that A.H. and Adriana had made substantive progress with their case plans and continued reunification services to the 12-month review date.

## DISCUSSION

### A

### *The Parties' Contentions*

Adriana contends the juvenile court abused its discretion when it ordered unsupervised visitation between A.H. and Karen, and lifted the no-contact order with A.H. She argues A.H. had not made any progress in sex offender treatment. She further argues the court should not have relied on the children's wishes because they had suffered significant trauma as a result of their father's physical and sexual abuse, and had not yet received consistent therapy and counseling. Adriana argues the court abused its discretion when it lifted the no-contact order without considering any opinion by K.H.'s psychologist or therapist on the effect visitation would have on K.H.'s psychological or emotional well-being.

The Agency contends Adriana lacks standing to contest the father's visitation order and the juvenile court did not abuse its discretion in modifying the visitation and no-contact orders.

B

*Standing*

The Agency argues Adriana lacks standing on the issue of A.H.'s visitation with the children because she was not aggrieved by the juvenile court's findings and orders. To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision. We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053.)

A parent's interest in the companionship, care, custody and management of his or her child is a fundamental civil right. (*In re B.G.* (1974) 11 Cal.3d 679, 688.) A parent not only has an interest in his or her child's safety and well-being but a duty to protect the child from harm. (*People v. Rolon* (2008) 160 Cal.App.4th 1206, 1215 [parents are under a common law duty to protect their children].) A parent who knowingly exposes a child to a sexual offender could be held liable for failure to protect. (§ 300, subd. (d); cf. *Rolon*, at p. 1219 [a parent who knowingly fails to take reasonable step to protect his or her child may be criminally liable if the purpose of nonintervention is to aid and abet the crime].) In addition, in order to regain custody of a child in a dependency proceeding, a parent must exercise increasingly frequent visitation with his or her child. If the parents are separated or divorced, reunification with one parent may injuriously affect the other parent's interest in the custody of care of the child. (See § 362.4 [juvenile court may

6

issue enforceable custody and visitation orders on termination of jurisdiction].)  Thus, a parent has legally cognizable interests in protecting his or her child.

Here Adriana objected to proposed orders expanding her children's visitation with the man who had sexually abused a daughter.  In doing so, she was exercising her right and duty as a parent to protect her children, and also to ensure their well-being.  Her interests in custody of her children may be affected if A.H. is able to reunify with them.  Because her interests may be adversely affected by the court's decision, Adriana has standing to challenge the visitation orders.

C

*Statement of Law and Standard of Review*

Section 362.1, subdivision (a)(1)(A) states:  In order to maintain ties between the parent and the child, any order placing a child in foster care, and ordering reunification services, shall provide for visitation between the parent or guardian and the child.  Visitation shall be as frequent as possible, consistent with the well-being of the child.  The juvenile court is responsible to ensure that regular visitation occurs between parent and child.  (*In re James R.* (2007) 153 Cal.App.4th 413, 435-436.)

A visitation order provides the Agency with "broad 'guidelines as to the prerequisites of visitation or any limitations or required circumstances.' "  (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1377, quoting *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237.)  Visitation orders must provide for flexibility in response to the changing

7

needs of the child and to dynamic family circumstances. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317.)

The scope of the court's discretion is determined by the legal principles governing the subject of the action. A judicial determination that falls outside the applicable principles of law constitutes an abuse of discretion. (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 119.) The trial court is afforded wide discretion to decide the terms and conditions of visitation, and its determination will not be disturbed in the absence of a manifest showing of abuse. (*In re Marriage of Murga* (1980) 103 Cal.App.3d 498, 504.)

D

*The Juvenile Court Acted Within Its Discretion When It Modified the Visitation Orders*

On this record we cannot conclude that the juvenile court abused its discretion when it adopted the Agency's recommendations to expand visitation, with the concurrence of the children's guardian ad litem. Visitation between parent and child is to be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A).) Although A.H. had only recently started sex offender treatment, he had made substantive progress with other requirements of his case plan. He immediately acknowledged that he had a substance abuse problem and may have inappropriately touched K.H. He also realized his drinking affected his judgment and ability to control his anger and negatively impacted his daughters. A.H. promptly enrolled in and successfully completed a parenting program and the first phase of substance abuse

8

treatment. The juvenile court found that A.H. had made substantive progress with his case plan.

The juvenile court did not minimize Adriana's concerns about A.H.'s untreated sex offender issues. The court carefully set limits on visitation. In Karen's case, it required any unsupervised visits to be short and to occur in a public setting. It gave the Agency the authorization to expand the time of visits, as long as they occurred during daytime hours. Karen, who is almost 17 years old, is competent and able to communicate her feelings. She requested unsupervised visits with her father. By requiring the visits to take place in a public setting, the court gave the Agency the flexibility to maintain and improve the parent/child relationship while protecting the child's well-being. (*In re Moriah T.*, *supra*, 23 Cal.App.4th at p. 1374.)

In K.H.'s case, Adriana argues the court abused its discretion when it lifted the no-contact order without considering any opinion of K.H.'s evaluating psychologist or therapist. Had Adriana raised the issue at trial, the court may have reasonably continued the matter to receive a professional opinion about the effect that contact with A.H. would have on K.H. On this record, however, we cannot conclude that the court abused its discretion when it authorized supervised visitation. The court could reasonably rely on the guardian ad litem's and social worker's representations that K.H. wanted to have visits with her father and that such visitation was consistent with her well-being. (§ 362.1, subd. (a)(1)(A).) The court could also consider the number of persons who were available to monitor K.H.'s response to visitation, including the visitation supervisor,

9

K.H.'s therapist, social worker, foster mother and guardian ad litem, when it fashioned the visitation order. The court limited its visitation order, denying the Agency the authority to expand visits without further hearing. The limited visitation order between A.H. and K.H. was reasonable and consistent with the court's obligation to provide visitation to the parent and to ensure the child's well-being. (§ 362.1, subd. (a)(1)(A).)

## DISPOSITION

The orders are affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.