Filed 6/14/21  In re Ma.F. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Ma.F., a Person Coming Under the Juvenile Court Law. | |
| | A160938 |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. C.H., Defendant and Appellant. | (Alameda County Super. Ct. Nos. JD03067501, JD03067801) |

In this juvenile dependency proceeding, C.H. (Father) appeals from an order granting him visitation with two of his minor children, Ma.F and J.F., "as frequently as possible consistent with the children's well-being," to be implemented at the discretion of respondent social services agency.[1]  Father

_____

[1]    Father has been referred to as C.H. or C.F. in the briefing and in prior appeals (A157057, A157984, A159798).  Ma.F. and J.F. were referred to as Ma.P. and J.P. in those prior appeals.

1

contends the court improperly delegated its judicial authority over visitation to the agency. We will affirm the order.

## I. FACTS AND PROCEDURAL HISTORY

In January 2019, the Alameda County Social Services Agency (Agency) filed dependency petitions pursuant to Welfare and Institutions Code section 300, subdivision (b)[2] as to five minors—aged one to six years at the time— alleging that Mother and Father had a history of domestic violence, Father perpetrated domestic violence against the children (including possibly breaking one of their legs), and Mother failed to protect the children. The court ordered the children detained.

### A. Appeal Numbers A157057 and A157984

At the jurisdictional and dispositional hearing on February 28, 2019, the court adjudged the children (including Ma.F.) dependents of the court, found true the allegations of the petition as amended, and ordered reunification services for Mother and Father. The court also continued to temporarily suspend visitation with Father pending the next review hearing. Father appealed (A157057).

At ensuing review hearings on March 14, March 28, May 15, June 7, and July 19, 2019, the court continued the order temporarily suspending Father's visitation based on reports from the minors' therapists. Father appealed from these orders as well. (A157984).

In consolidated appeal numbers A157057 and A157984, we affirmed the orders on the ground that sufficient evidence supported a finding that even therapeutic visits would threaten the children's emotional wellbeing.

---

[2] Except where otherwise indicated, all statutory references are to the Welfare and Institutions Code.

B. Appeal Number A159798

At the 12-month permanency hearing (§ 366.21, subd. (f)), the Agency recommended that Ma.F. and his brothers remain out of home, his sisters have a two-week trial visit with Mother in anticipation of their return to her, and Father's reunification services be terminated. Father objected to the termination of his reunification services, and the court set a contested hearing.

Father's counsel asked the juvenile court to grant the Agency discretion to allow telephone contact between Father and Ma.F. The court denied Father's request, and Father appealed (A159798). We affirmed the order, concluding that substantial evidence supported a finding that the children, including Ma.F., would be at risk of detriment to their emotional well-being if Father was granted telephone contact with Ma.F.

C. Current Appeal: 12-Month/18-Month Review Hearing

In an addendum report prepared for the contested 12-month review hearing as to Ma.F. and J.F., the social worker reported Father's progress. According to Father's therapist, it would be beneficial for Father to have communication with the minors to incentivize additional progress, starting with phone calls. Therapist Macias agreed that Father was ready to see the minors and his further progress depended on some kind of father-child contact, recommending a slow transition from letters to phone calls, to video visits, and eventually to in-person visits. Therapist Ponthier opined that presenting Father's letters to Ma.F. and J.F. would be a good way to allow Father back into their lives.

The contested 12-month review hearing as to Ma.F. and J.F. began on August 18, 2020, and continued on August 28 and September 14, 2020. On September 14, 2020, the court extended Mother's reunification services to 24

3

months.  It terminated Father's reunification services, finding there was no substantial probability Ma.F. and J.F. would be returned to Father if services were extended, and no exceptional circumstances existed for extending services to 24 months.  (See § 366.22, subds. (a)(3), (b).) Despite Father's compliance with his case plan and reasonable services from the Agency, the minors were still scared of Father in a way that precluded reunification in the next few months.

In addition, the court ordered that visits between the minors and Mother and Father would take place "as frequently as possible consistent with the children's well-being."  The court lifted a prior suspension on letter-writing, allowing the children's therapists and the child welfare worker to read one pre-screened letter from Father to the children per week, unless they believed it would not be in the children's best interests.  The court granted a request from the minors' attorney for five days' notice if contact was to move beyond the letter-writing stage.

As directly relevant to this appeal, Father's attorney then asked for "an order for therapeutic visits to commence," rather than leaving the commencement of visits to the Agency's discretion.  The court denied the request, indicating that the commencement of visits would be at the Agency's discretion and adding, "Let's see how the letters go."  In addition, the court ruled, family therapy was to remain in place but could "only be implemented if the [children's therapists and child welfare worker] are recommending it."

This appeal followed.

## II. ARGUMENT

Father argues that, because the juvenile court did not find that visits would be detrimental to Ma.F. and J.F., the court was required to order some specific minimum amount of visitation and erred by delegating authority over the visits to the minors' therapist and the social worker. We disagree.

### A. Law

Section 362.1, subdivision (a)(1)(A) requires the court to order parent-child visits as frequently as possible consistent with the well-being of the child.[3] Even after reunification services are terminated, the court must order parent-child contact in the absence of a detriment finding. (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1504; see § 366.21, subd. (h).)

It is the juvenile court that has "the power and responsibility to regulate visitation between dependent children and their parents." (*In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476.) Nonetheless, a court may delegate decisions to the Agency such as the time, place, and manner of the visitation. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.) The ultimate supervision and control over this delegated discretion must remain with the court. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 51.) Therefore, the court cannot delegate to a third-party "*absolute* discretion to determine *whether any* visitation occurs." (*In re Moriah T., supra,* 23 Cal.App.4th at

---

[3] Under section 362.1, subdivision (a), an order placing a child in foster care and ordering reunification services "shall provide as follows: [¶] (1) [¶] (A) Subject to subparagraph (B), for visitation between the parent or guardian and the child. Visitation shall be as frequent as possible, consistent with the well-being of the child. [¶] (B) No visitation order shall jeopardize the safety of the child." Visitation may be denied (at least temporarily) if the visits threaten the child's physical *or* emotional well-being. (*In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1101–1104; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219–1220.)

pp. 1374–1376, italics added; see, e.g., *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 [exit order allowing supervised visitation by father "to be determined by the parents" improperly delegated to mother the discretion to veto visitation]; *In re Donnovan J., supra*, 58 Cal.App.4th at pp. 1477–1478 [exit order precluding visitation without the permission of the children's therapists constituted an unlawful delegation of judicial authority]; *In re Hunter S., supra*, 142 Cal.App.4th at p. 1505 [order granting mother visitation " 'as can be arranged' " was improper because it effectively gave the child "virtually complete discretion to veto visitation and indeed all contact, with his mother, a discretion he exercised without any oversight or direction by the court"].)

B. <u>Analysis</u>

Here, the juvenile court ordered that visits take place "as frequently as possible consistent with the children's well-being." When Father's counsel requested "an actual order for therapeutic visits to commence," meaning an order "for the therapists of the children and the family therapist to make a decision as to whether [visits] should go forward in a paced, slow manner" rather than visits being up to "Agency discretion," the court denied the request and added that discretion "will still stand." In other words, the court ordered visitation, but allowed the Agency to ascertain, with input from the therapists, *when* visits would be consistent with the children's well-being.

The court therefore did not delegate *absolute* authority over visitation, but only discretion as to its timing, with an intent to maintain judicial supervision over the visitation issue. This was a proper exercise of the court's authority. (*In re Moriah T., supra*, 23 Cal.App.4th at pp. 1374–1375 [order that father visit regularly and that visitation be "consistent with the

6

well-being of the minor[s], and at the discretion of Child Protective Services (CPS) as to the time, place, and manner" was a permissible delegation to CPS of the responsibility of managing the ministerial details of visitation, subject to the juvenile court's supervision and control over its exercise].)[4]

Instructive in this regard is our Supreme Court's opinion in *In re Chantal S.* (1996) 13 Cal.4th 196. There, the juvenile court ordered that a therapist should " 'facilitate' " visitation with the minor once Father had made " 'satisfactory progress.' " The Supreme Court concluded that the portion of the order allowing the therapist to facilitate visitation was permissible because it merely mandated the therapist's participation and did not grant the therapist any discretion. The portion of the order that allowed the therapist to determine when satisfactory progress had been made was also permissible, because the juvenile court must have concluded that visits were not appropriate until father had made satisfactory progress. (*Id.* at pp. 213–215.) Similarly here, the juvenile court must have determined that visits would not be appropriate unless—as the law dictates—they would be consistent with the children's welfare; it was not improper for the court to allow the Agency, whether alone or in conjunction with the minors' therapists, to determine when that threshold was met, subject to review by the juvenile court.

---

[4]    The parties infer from the reporter's transcript that the judge granted discretion to the Agency *and the therapists* to determine when visits should commence. It appears instead that Father's counsel was seeking an order requiring visits to begin whenever the therapists decided it could go forward, as opposed to visits being up to "Agency discretion," and the court's denial of that request amounted to a delegation of discretion to the *Agency alone* in determining when visits would be consistent with the children's welfare. The court's later statement that "it can only be implemented if the professionals are recommending it" pertained to implementation of family therapy, not visits. Under either interpretation, the order was not erroneous.

Moreover, the juvenile court in this case granted discretion to *the Agency*—as an arm of the juvenile court—and not exclusively to private parties. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1233–1237 [upholding order that visitation "will be at [the agency's] discretion and the children's discretion," because the agency acts as an arm of the juvenile court; the rapidly changing and complex family situations in juvenile dependency matters require delegation to the agency of some "quasi-adjudicatory powers"].) The cases on which Father relies disapproved of judicial delegation of authority exclusively to third parties, who do not have the same relationship with or obligation to the juvenile court. Father fails to establish error.

Finally, even if the court's order had been erroneous, Father does not establish prejudice. He does not point to anywhere in the record indicating that, as a result of the September 14, 2020 order, he was denied visitation because of the Agency's and therapists' determination that visits would be inconsistent with the minors' best interests, without the opportunity for review by the juvenile court.

## III. DISPOSITION

The order is affirmed.

_____

NEEDHAM, J.

We concur.


_____

SIMONS, Acting P.J.


_____

RODRIGUEZ, J. *


*In re Ma F.*/ A160938


_____

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9