Filed 9/14/22  In re Sofia P. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re SOFIA P. et al., Persons Coming Under the Juvenile Court Law. | B315459 (Los Angeles County Super. Ct. No. 20CCJP00072A/B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  SERGIO P.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Etan Z. Lorant, Juvenile Court Referee. Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

This appeal concerns a juvenile court exit order terminating dependency jurisdiction over minors Sofia (born 2015) and Samantha (born 2018); awarding joint legal custody of the children to their parents, Sandra P. (mother)[1] and appellant Sergio P. (father); awarding mother sole physical custody of the children; and limiting father to monitored visits with the children.  Father challenges the monitored visitation order, which we affirm.

## BACKGROUND

### Jurisdiction and disposition

In a previous nonpublished opinion, *In re S.P.* (Feb. 17, 2021, B305444), we affirmed the juvenile court's orders establishing dependency jurisdiction over the children and removing them from father's custody based on findings, under Welfare and Institutions Code section 300, subdivisions (b), (d), and (j)[2] that the children were at risk of harm because father sexually abused Sofia and mother knew of the sexual abuse but failed to protect the children.  We summarize below the pertinent facts from our previous opinion.

---

[1]     Mother is not a party to this appeal.

[2]     All further statutory references are to the Welfare and Institutions Code.

In November 2019, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging sexual abuse of Sofia. According to the reporting party, the parents were attending a child custody mediation as part of their divorce proceedings when mother disclosed her belief that father had sexually abused Sofia in 2017.

Mother told the investigating social worker that she and father had been separated for three years after mother learned that father had been having an affair with his first cousin. Father had a history of inappropriate sexual behavior. Approximately seven years prior, mother's then 22-year-old sister accused father of attempting to orally copulate her in the middle of the night. Mother's sister reported the incident to law enforcement but subsequently dropped the charges. Mother said she also learned that father had tried to touch a 16-year-old girl inappropriately, but mother did not know the details of that incident.

Mother and father were already separated in December 2017 when Sofia was two years old and mother was pregnant with Samantha. Mother asked the paternal grandmother to care for Sofia one evening and instructed the paternal grandmother not to allow father to take Sofia to his home, a separate residence behind the paternal grandmother's home. When mother returned approximately four hours later to pick up Sofia, she was informed by paternal relatives that father had taken Sofia to his home. Mother went to father's home and found the door locked, which was unusual, as father had never locked the door in the past. Mother asked father about the locked door, and father said children in the paternal grandmother's home were trying to open

the door. Sofia had been fussy, and father took Sofia to his home to lie down. He did not want the other children to disturb them.

Sofia's diaper was soiled, and mother began changing her. Sofia quickly closed her legs and asked, "Are you going to touch my colita (vagina) too?" Sofia had never used the words "touch" or "colita" before. Mother asked Sofia who had touched her, but the child would not answer. Mother then asked father if Sofia had been with anyone else or if someone else had changed the child's diaper. Father responded that Sofia had been with him the entire time. When mother attempted to discuss Sofia's disclosure with father, he left the home.

The following day Sofia again closed her legs when mother began changing the child's diaper. Mother asked Sofia if someone had touched her, and the child denied that anyone had done so. Mother did not report any allegations of sexual abuse to law enforcement at the time.

Despite her misgivings about father, mother asked father to babysit the children on October 19, 2019. She told father to remain in the paternal grandmother's home and instructed the paternal grandmother not to allow father to be alone with the children. When mother returned to collect the children later that day, however, the children were in father's home.

The week after the children's October 2019 visit with father, Sofia began exhibiting sexualized behavior. While mother was feeding Samantha, Sofia started licking mother's inner thigh and the front of mother's shirt. Mother asked Sofia what she was doing, and the child responded that she was playing a game. Sofia said she played the game "with someone I love very much and with someone who loves me." When mother inquired further,

Sofia disclosed that she played the game with father, and that it was a "secret."

That same week, Sofia, while playing with puppets, said, "Come into my mouth, my mouth is a celebration." Mother asked Sofia where she had heard that statement, and the child responded that she did not remember.

Mother said she had attempted to discuss her concerns with father several times. But father said she was accusing him of things he had not done. Mother told the social worker that Sofia had been expressing reluctance to visit father, and mother had observed Sofia push father away when he attempted to hug the child.

With mother's consent, the social worker interviewed Sofia separately. Sofia reported being happy with father and feeling safe in his home. She was able to identify the parts of the body and denied being touched inappropriately by anyone. She volunteered that she had seen father urinate while standing up.

The maternal grandmother told the social worker that she shared mother's concerns about father and the children. She reported that approximately three months ago, Sofia kissed her and mother on their buttocks. When asked where she had learned that behavior, Sofia said, "Dad showed me."

On December 11, 2019, the Department received a report from a Bell Gardens Police Department investigation in November 2019. The investigation concluded there was no evidence to indicate Sofia had been sexually abused. A forensic medical examination of Sofia and Samantha on December 17, 2019, could neither confirm nor negate sexual abuse.

Father told the social worker in a December 23, 2019 interview that he and mother had separated in late 2016 because

of his affair with his first cousin. Father also admitted that he did not have a relationship with maternal relatives because of an alleged incident involving mother's sister that happened years ago.

Father said he could not recall exactly what happened during the December 2017 incident involving Sofia. Father said he and Sofia were in the paternal grandmother's home, and the child asked to go to father's home to play with her toys. Father took Sofia to his home and said he locked the door "out of habit." He added that mother had keys to the home, and he had nothing to hide. Mother arrived to pick up Sofia and was changing the child's diaper when father received a phone call. He "froze" when mother informed him about Sofia's disclosure.

The juvenile court sustained the petition as alleged, assumed jurisdiction over the children, and ordered them removed from father's custody. Father appealed the jurisdictional and dispositional orders.

We affirmed the juvenile court's orders, concluding that Sofia's December 2017 disclosure, father's admission that he was alone with Sofia during the entirety of her visit, and his inconsistent statements and evasive behavior about the incident was substantial evidence that he sexually abused Sofia. We further concluded that substantial evidence corroborated Sofia's disclosure and identified father as the perpetrator.

**Section 364 review proceedings**

In August 2020, the Department reported that father was working full time, had completed two parent education programs, and was participating in individual therapy and sex abuse counseling. The sex abuse program administrator reported that father's participation was considered "Fair" in all categories of

participation except "Denies/minimizes responsibility." Father believed he was benefitting from participation in the programs, but denied that he ever sexually abused the children.

Sofia reported that she enjoyed visiting with father and wanted to continue the visits so long as a monitor was also present. The Department noted that while father had maintained contact and a family bond with the children, he needed to continue to participate in therapy to address sexual boundaries and sexual awareness with the children. The Department recommended continued jurisdiction over the children and continued services for both parents.

In March 2021, the Department reported that father was receiving enhancement services after completing a parent education program, individual counseling, and 44 sessions of sexual awareness counseling. Father's sex abuse counselor reported that father had been on task in most areas but continued to deny or minimize responsibility for his conduct.

The Department remained concerned for the children's safety and well-being given father's history of sexual assault on other family members, the young age of the children, and father's failure to progress to unmonitored visits with the children. The Department recommended that the juvenile court terminate jurisdiction, grant joint legal custody of the children to both parents, grant physical custody to mother, and allow monitored visits to father.

In a last minute information for the court, the Department provided a statement of successful completion of sex offender-specific therapy completion worksheet from father's counselor, dated April 6, 2021, which reported that father had completed the program with excellent attendance and met all minimum

7

standards and required goals. The worksheet noted that father's risk of future recidivism was unknown given that he "never assumed partial, or full responsibility for allegations against him of sexual abuse cited in Dependency Court docu[ments]."

In a subsequent last minute information for the court, the Department reported on a June 30, 2021 interview with a paternal aunt, who said that she would continue to monitor father's visits with the children and would assist father in bathing the children and helping them dress. The paternal aunt further stated that family members are always present during father's visits with the children and would contact the Department if they observed any inappropriate interactions or occurrences.

**Section 364 review hearings**

On August 31, 2021, the juvenile court issued its tentative ruling to terminate jurisdiction with a custody order granting both parents joint legal custody of the children, mother sole physical custody, and father monitored visitation. The juvenile court stated that although father had completed all of his court-ordered programs, unmonitored visits were improper at that time, given father's continued insistence that he was innocent and that Sofia's disclosures were untrue.

At a further review hearing held on September 28, 2021, father's counsel requested unmonitored visits for father. Father's counsel argued that father had complied with all court orders, including completing a 52-week sexual abuse perpetrator's course, typically ordered for convicted felons, rather than the six-month course ordered by the court. Counsel stated that father had gained insight from his programs, and there was no reason to believe the children were at risk if their visits with father were

unmonitored. Counsel further argued that the visits could be restricted to public settings. Counsel requested in the alternative that the court maintain jurisdiction so that father could work toward gaining unmonitored visitation.

Mother's counsel asked that father's visits remain monitored, noting that father would not admit to the sustained allegations of the section 300 petition and that the children were still at risk of harm. The children's counsel also requested monitored visitation given father's refusal to acknowledge the inappropriate conduct that had resulted in dependency jurisdiction over the children. Given father's lack of insight, counsel did not believe unmonitored visits with the children were appropriate. Counsel further noted that although the children could speak, they were still very young.

The juvenile court terminated its jurisdiction and issued an order granting the parents joint legal custody of the children, mother sole physical custody, and father monitored visitation. Father appealed the monitored visitation order.

## DISCUSSION

### I.    Applicable law and standard of review

When a juvenile court terminates jurisdiction over a dependent child, it may issue family law orders governing custody or visitation, commonly referred to as "exit orders." (§ 362.4, subd. (a); *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.) These exit orders are transferred to the family court to become part of the relevant family law case file or, if no proceedings are pending in family court, "may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4,

9

subd. (c); see *In re John W.* (1996) 41 Cal.App.4th 961, 970, fn. 13 (*John W.*).)

When making custody orders, the juvenile court must "make an informed decision concerning the best interests of the child" (*John W., supra*, 41 Cal.App.4th at p. 972), and its primary concern must be a determination of "'what would best serve and protect the child's interest'" (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652).

The juvenile court has broad discretion in making custody orders when terminating jurisdiction in a dependency case. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) We review such orders for an abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason."'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) As a reviewing court, we do not substitute our judgment for that of the juvenile court. (*Id*. at p. 319.) We do not "weigh the credibility of the witnesses or resolve conflicts in the evidence. [Citation.] Rather we must indulge in all reasonable inferences to support the findings of the juvenile court and must review the record in the light most favorable to the juvenile court's orders." (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.) Where substantial evidence supports the trial court's order, there is no abuse of discretion. (*Ibid*.)

## II.    **No abuse of discretion**

The juvenile court did not abuse its discretion by ordering monitored visitation between father and the children. Sofia stated she wanted to continue visiting with father so long as a monitor was present. A court may issue a visitation order that considers the child's wishes and well-being. (*In re Julie M.* (1999)

10

69 Cal.App.4th 41, 50-51; *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1233.) The juvenile court also considered the assessment of father's sexual abuse therapist, who reported that father denied or minimized his responsibility and concluded that father's risk of recidivism was unknown. Substantial evidence supports the juvenile court's order for monitored visitation, which was neither arbitrary nor unreasonable.

## DISPOSITION

The order terminating jurisdiction, granting both parents joint legal custody of the children, mother sole physical custody, and father monitored visitation is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

11