Filed 1/29/25  In re J.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.J., a Person Coming Under the Juvenile Court Law. | C098374 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, ADULT AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.J.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD241457) |

Appellant Ja.J. (father) appeals from an order that terminated the dependency jurisdiction of the juvenile court over the minor J.J.  The order authorized a minimum of three visits annually, which the minor could refuse.  Father argues the court abused its discretion when it improperly delegated the visitation decision to the minor, effectively rendering the visitation order illusory.  The People argue the order is in the best interests

1

of the minor. We agree with father and reverse and remand the matter with instructions for the court to issue a new order consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

We need not recount in detail the facts of the case, as the juvenile court's underlying decision to grant visitation rights to father are not disputed. As such, we generally summarize factual and procedural background.

Based on a referral the Sacramento County Department of Child, Family and Adult Services (Department) received indicating a domestic violence incident occurred between J.C. (mother) and J.I. (stepfather) where mother fell down the stairs at her home, in July 2021, the Department filed a protective custody warrant and petition asserting jurisdiction over the 10-year-old minor. The petition alleged that mother had an untreated substance abuse problem, which impaired her ability to care for the minor. (Welf. & Inst. Code,[1] § 300, subd. (b)(1).) It further alleged the minor was at risk of harm related to the minor's mother and stepfather. (*Ibid*.) Father was a nonoffending and noncustodial parent under the petition. Prior to the petition being filed, a social worker interviewed mother and the minor. The social worker noticed several empty 12-ounce cans of alcohol in a trash can, trash bags, and grocery bags by the entrance to the apartment. Mother's behavior during the interview indicated she may have been under the influence of alcohol because she had slurred speech, shaking hands, red eyes, and a puffy face. Mother declined to take a drug test during the interview, denied having an alcohol or drug issue, and further denied any allegations of domestic violence. She told the social worker that she had two alcoholic drinks at a restaurant on the day of the incident. Mother said she did not remember how she fell or why she called the police.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

The minor, when interviewed in mother's presence, said he witnessed a domestic violence incident between mother and stepfather, which involved kitchen knives. He said it was the first domestic violence incident he had seen and felt safe at home.

Mother agreed to participate in an informal supervision plan. However, she would not agree to immediately stop using cannabis, make the minor available to the Department each week, or voluntarily place him in a temporary living arrangement. Mother was not accepted into a service plan because she denied past and current domestic violence in her relationships, denied current alcohol and drug use, and she was unwilling to participate in services.

In August 2021, the juvenile court made a prima facia finding on the section 300 petition and ordered the minor to be detained and released to his maternal great-grandparents. The juvenile court found father to be the alleged father of the minor.

In November 2021, the juvenile court sustained the Department's petition but continued the disposition hearing. In March 2022, the juvenile court declared the minor a dependent of the court and denied father's request for custody. It placed the minor into foster care and ordered reunification services for mother and father. Father appealed from those findings and orders and our court dismissed the appeal as moot. (*In re J.J.* (Feb. 23, 2023, C095943) [nonpub. opn.].)

In August 2022, father filed a petition under section 388 requesting the juvenile court modify its order from allowing "regular visitation . . . consistent with the child's best interest and well being," to weekly in-person visits and twice weekly phone or virtual visits between him and the minor. In September 2022, at a combined 6-month and 12-month review hearing, the juvenile court heard father's section 388 motion. It found the Department provided reasonable reunification services to the parents, that mother had made significant progress in mitigating or abating the issues that led to the minor's removal, and that father had not. The juvenile court ordered the minor to be placed with mother, terminated reunification services with father, and denied father's section 388

petition. Father appealed and this court dismissed the appeal because father failed to file an opening brief.**2**

In March 2023, the Department submitted an in-home review report to the juvenile court, which recommended that dependency jurisdiction be terminated for the minor and sole physical custody be granted to mother. The court found conditions justifying jurisdiction under section 300 no longer existed and were not likely to recur if supervision were withdrawn. It terminated dependency, awarded sole custody to mother, and awarded father supervised visitation. The visitation order provided that father would receive at least three supervised visitations per year. The visits were to occur in-person or virtually at the determination of mother. However, the order indicated that the minor could refuse visits.

DISCUSSION

Father claims the juvenile court's visitation order is illusory because it allows the minor to "refuse visits." The People argue that the order is in the best interests of the minor because it allows the minor to see father "if he is willing and able." We conclude the order is illusory and reverse.

The juvenile court has broad discretion to fashion visitation orders. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) Under section 362.4, a juvenile court may issue an exit order regarding visitation when it terminates jurisdiction over a dependent minor. (See *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122.) We review a juvenile court's exit order under section 362.4 for abuse of discretion and will " 'not disturb the order unless the court " ' "exceeded the limits of legal discretion by

---

**2**    Pursuant to Evidence Code sections 455 and 459, we gave the parties notice of, and opportunity to comment on, our intention to take judicial notice of this court's order dismissing father's previous appeal in case No. C097079 dated January 27, 2023. No party filed objections. Therefore, we take judicial notice of the order. (Evid. Code, §§ 452, 459; *Kinney v. City of Corona* (2023) 99 Cal.App.5th 1, 13, fn. 6.)

4

making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

"The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the [juvenile] court and may not be delegated to nonjudicial officials or private parties." (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.) "This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated." (*Ibid.*)  When a juvenile court grants visitation, "it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur." (*In re S.H.* (2003) 111 Cal.App.4th 310, 313 (*S.H.*).)

An order that delegates complete and total discretion to a third party to determine whether or not visitation occurs is invalid. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237.)  If a juvenile court fails to mandate a minimum number of visits within a given period of time, the court's abstract recognition of a parent's right to visitation is illusory. (*S.H.*, *supra*, 111 Cal.App.4th at p. 319.)  When the court abdicates its discretion in that regard and permits a third party, including a child, to determine whether any visitation will occur, the court violates the separation of powers doctrine. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 48-49.)

Father argues *S.H.*, *supra*, 111 Cal.App.4th at page 310 requires us to reverse the judgment and remand the matter for further proceedings.  We agree with father.

In *S.H.*, *supra*, 111 Cal.App.4th at page 313, the visitation order granted the mother the right to visitation, but stated, " 'if the children refuse a visit, then they shall not be forced to have a visit.' "  The mother challenged this order as an impermissible delegation of the juvenile court's judicial authority to the minors to determine visitation. (*Ibid.*)  The appellate court in *S.H.* concluded this order abdicated the juvenile court's duty to determine visitation and thus constituted an invalid delegation of its judicial authority. (*Id.* at pp. 317, 319.)  The court noted, "[T]he power to decide whether *any* visitation occurs belongs to the court alone." (*Id.* at p. 317.)  The court concluded that

5

failing to mandate any minimum number of visits in the exit order transformed the children's ability to refuse a visit into the practical ability to prevent any visits from occurring. (*Id*. at p. 319.) The court held, "[W]hile the juvenile court may allow the child to refuse to attend a particular visit, to prevent the child from exercising a de facto veto power, there must be some assurance that, should that occur, another visit will be scheduled and actually take place." (*Ibid*.)

Pursuant to the exit order, father was required to have at least three visits with the minor per year. Similar to the exit order in *S.H.*, the order here says, "The child may refuse visits." The language in the order improperly delegated the court's authority to the minor and removed any assurances to father that any of the three mandated visits would in fact occur. (*S.H.*, *supra*, 111 Cal.App.4th at p. 319.) The order is illusory and must be reversed because it improperly delegated de facto veto power to determine the right and extent of any visitation to the minor. (*In re T.H.*, *supra*, 190 Cal.App.4th at pp. 1123, 1124 [delegation to mother]; *In re Julie M.*, *supra*, 69 Cal.App.4th at pp. 48-51; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138-1139; *S.H.*, at pp. 317-320.)

6

## DISPOSITION

The portion of the juvenile court's exit order regarding father's visitation with the minor is reversed. The matter is remanded to the juvenile court to conduct a new hearing on the issue of visitation.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
MAURO, J.

/s/_____
MESIWALA, J.

7