Filed 7/1/21  In re K.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.L., JR. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076207 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J277652-J277655) |
| v. | OPINION |
| K.L., SR., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Shobita Misra, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Michelle D. Blakemore, County Counsel and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

Father K.L., Sr., appeals from an order made at an 18-month review hearing (Welf. & Inst. Code,[1] § 366.22), which he claims reduced visitation to his four biological children. The trial court established jurisdiction over the four biological children of father based on allegations of physical abuse, failure to protect, sexual abuse and abuse of a sibling, and granted father weekly visits of two hours each. While the children were placed with paternal grandparents, father enjoyed more liberal contact under the supervision of his parents.

Eventually, despite father's ongoing attempts to sabotage mother's efforts at resuming custody, the mother reunified with the children. At that point, the paternal grandparents were no longer available to act as visitation monitors. Thus, at the combined section 364/366.22 hearing, the court reinstated the prior order for supervised visits, a minimum of once per week for two hours, with authorization to liberalize if father found an approved monitor. Father appealed.

On appeal, father claims the trial court abused its discretion in reducing his visits because there is insufficient evidence to support the court's finding that more frequent contact was detrimental to the children and that reducing visits was not in the children's best interests. We affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

Much of the history of this case, father's fourth appeal, is not necessary to the issue presented on appeal, so it has been condensed. This family includes mother, A.L., who has not appealed, mother's son P.G., from a prior relationship, father, K.L. Sr., I.L., an unrelated minor for whom father had been appointed legal guardian, and the four biological children of A.L. and K.L., Sr.[2] Because the four biological children have very similar names with the same initials, when we need to refer to a particular child, we will refer to them as K.L., Jr., K.L. the eldest son, K.L. second eldest son, and K.L. the daughter.

In 2018, the San Bernardino County Children and Family Services agency (CFS), intervened in the family. The original petition alleged excessive discipline and physical abuse of I.L. and P.G., failure to protect, domestic violence between the parents, and risk of harm due to sibling abuse. I.L. was father's ward under a Probate Code legal guardianship. Originally, all the children except for I.L., who is unrelated biologically to mother or father, were maintained in mother's care, insofar as she had moved out of the family residence after the most recent incident of domestic violence. Placement was conditioned on father not residing in the home and not having contact with the children outside of CFS supervision.

Prior to the jurisdictional hearing, it was learned that I.L. had been sexually abused by father, and the petitions were amended to add allegations of sexual abuse as to I.L.,

[2] Mother did not appeal, and neither I.L. nor P.G. are involved in this appeal by father. Information pertaining to mother, I.L., and P.G. is provided for context, only.

with sibling abuse allegations for the other children. In February 2019, concerns about mother allowing the children to have contact with the father arose and the social worker became aware that father had coached the children not to speak with CFS workers. After investigating further, the social worker saw mother's car in father's driveway, although mother stated the children remained in the car as she went into the house to do laundry. Father had maintained possession of the family residence after mother moved out.

As a result, in March 2019, the children were detained from mother and placed in the home of the paternal grandparents. Following the detention, father was ordered to move out of the family residence pursuant to a Family Law restraining order obtained by mother, so that mother could move back into the home.

The jurisdictional hearing took place in April 2019. The court made true findings on all the allegations of the petitions and declared all the children dependents of the court under the provisions of section 300, subdivisions (a), (b), and (d). The court removed the children from both parents and maintained them in the residence of the paternal grandparents. Father was ordered to undergo a psychological examination, and family reunification services were ordered for both parents. Father appealed the judgment, but his appeal was dismissed pursuant to *In re Sade C.* (1996) 13 Cal.4th 952. (E072633, *In re K.L., et al.*)

In October 2019, CFS submitted a six-month status review report, recommending the children remain in their placement with paternal grandparents, but that the court approve a 29-day visit with mother following four successful overnight and weekend

4

visits. Both parents had participated in court-ordered services and a psychological evaluation of father had been conducted but the report was unavailable. Mother was employed at two jobs and was no longer dependent upon father, who had moved out of the family residence and into military housing.

At the six month review hearing held on October 23, 2019, the court ordered unsupervised visits for mother and the matter was continued to monitor those visits before considering an extended visit. In a follow up report, the social worker recommended that P.G., K.L., Jr., and K.L. daughter be returned to mother's custody with family maintenance services. K.L. the eldest and K.L. the second eldest wished to remain with their paternal grandparents.

The social worker sought another psychological evaluation of father because the first evaluator did not have complete information about the jurisdictional bases. Additionally, father's therapist provided the social worker with a progress report reflecting the opinion that father had successfully been treated and that the children could be safely returned, based on his completion of the domestic violence related plan requirements. The therapist informed the social worker that father had addressed all the sustained allegations, but there was no evidence father had participated in services to address the sexual abuse allegations that had been sustained.

In December 2019, the court ordered K.L., Jr., and K.L. the daughter (the two youngest children) placed with mother on an extended visit, while the two older sons remained placed with the paternal grandparents, pending the completion of the six-month

5

review hearing. On January 8, 2020, the contested six month review hearing resumed. But on January 15, 2020, the court terminated the visit based on allegations mother had used her father, uncle, and an adult daughter for childcare while she worked, although none of the individuals had been screened by CFS.

Other referrals against mother also had been initiated by father, who alleged that mother was associating with known drug users, that the two youngest children were left unsupervised, that mother drank to excess, and that the children reported persons smoking something that smelled weird in the home. On February 26, 2020, the two youngest children were placed back with the paternal grandparents, where the two older siblings remained placed, while the referral allegations were investigated.

By June 2020, as the twelve-month review approached, CFS reported that all the prior reports were closed as unfounded, so CFS again recommended that mother be granted an extended visit with the children after four successful overnights, and that services for father be continued. On June 16, 2020, CFS submitted additional information to the court indicating that father was actively trying to sabotage mother's reunification efforts by contacting her employers to make anonymous complaints about mother's work, applying for restraining orders in Family Law Court alleging mother slashed his tires, requesting welfare checks on the children while they visited mother overnight, alleging that the daughter had been sexually abused, and that mother was selling drugs.

6

Father also sent an email to the social worker with what he maintained were improper text messages from mother as well as screen captures of a photo he said was on his daughter's phone of an unknown person's genitalia. The children denied any abuse, or seeing any nude photos on their phones. However, the children did say that during their visits with father, he made inappropriate comments about mother. Despite all father's efforts, on June 17, 2020, the court ordered mother's overnight visits to continue. Father was granted supervised visits.

One month later, the social worker provided additional information to the court indicating it could not be determined if father was benefitting from services. Despite the serious allegations he had made about mother's conduct with the children, his goal was that she have custody of the children during the week and he would take the children on weekends. His therapist provided progress reports but would not discuss the extent to which father addressed sexual abuse allegations with the social worker because father had not consented. The social worker could not determine whether father accepted responsibility for the sexual abuse, and, due to father's unremitting harassment of mother, the social worker felt that father was engaging in ongoing manipulation to exert control. The worker also recommended an extended visit for mother now that all the reports of suspected abuse or neglect had been closed as unfounded.

On July 23, 2020, the court returned the two younger children along with P.G., to mother on the condition that no unapproved third parties be in contact with the children and father did not reside in the home or have contact with the children without CFS

7

supervision.  The two older children were maintained in the home of their paternal grandparents.  Mother was granted unsupervised visits with the two older boys, but father's visits were "as previously ordered," that is, supervised.  Father appealed this order, but a no-issue letter brief was filed pursuant to *In re Sade C.* (1996)13 Cal.4th 952, and the appeal was dismissed.  (E075457, *In re K.L., et al.*)

On September 2, 2020, the social worker submitted a report for the upcoming semi-annual review hearing (§ 364) as to the two younger children, and the 18-month review hearing (§ 366.22) as to the two older children.  The social worker recommended that the younger children remain in mother's custody under the family maintenance services, and that the older children remain with the paternal grandparents with an additional six months of services for mother.

CFS recommended that father's services be terminated because father had continued to interfere with mother's reunification by making continuing allegations, complaining to her employers in an attempt to sabotage her employment, and created fake social media accounts by which he harassed her.  In the meantime, he had been caught on video tape chasing mother into her home.  Father also repeated allegations that mother had a boyfriend who was abusing the daughter by sharing pornographic photographs with her in May 2020, which the daughter denied.  It turned out there was a possibility that father himself had uploaded photos onto the formerly shared family iCloud account.

8

The report also noted that the two older children wished to remain with the paternal grandparents, and were unwilling to participate in family therapy, although the social worker hoped that once therapy was scheduled, they would give it a chance. While mother had completed services and had demonstrated benefit from them, father had not ameliorated the concerns about domestic violence. He minimized and denied his role in the ongoing abuse of mother and his refusal to sign a consent prevented the social worker from determining if he had ever addressed the sexual abuse allegations in services. The most recent psychological evaluation showed that father's interest in and motivation for treatment was below average, and the social worker noted he demonstrated a problematic pattern of behavior that is consistent with an abuser's efforts to manipulate and control, indicating lack of benefit from the domestic violence services.

During this time frame, father enjoyed liberal supervised visits of approximately eight hours per week at the home of his parents. However, with the younger children returned to mother, the grandmother had returned to work full time, rendering her unable to supervise visits, which would interfere with the liberal visitation father had enjoyed. Additionally, the social worker noted conflict between the paternal grandparents and the mother; the paternal grandmother was observed instigating an argument with mother at the CFS office at a supervised visit. The social worker recommended father be granted supervised visits for a minimum two hours per week.

On October 9, 2020, the social worker provided additional information to the court indicating that the paternal grandmother had made a derogatory comment about mother,

although P.G. only heard father talking about the girlfriend of one of the siblings by referring to her as "crazy just like [A.L.]" Father still had not signed the consent so the social worker could confirm that father had addressed the sexual abuse allegations, limiting his consent to ongoing periodic progress reports. Father continued his harassing pattern towards mother, sending a delivery of food and snacks from Costco to her home, and using fake social media accounts to send her messages, in violation of restraining orders. Further, on one occasion, the children had seen a car idling in front of mother's residence, and a person appeared to be watching mother in the front of the home. That evening, father sent a message to mother saying she was doing good now. Father was also aware of mother's work schedule.

In the meantime, the social worker reported that the two older children agreed to participate in an assessment for family therapy services, although they did not meet the required medical necessity for treatment. On October 14, 2020, at the contested status review hearing, the court ordered the younger children maintained with mother, and ordered an extended visit with the two older children in mother's home, over the objection of minors' counsel. The balance of the matter was continued because father had been quarantined due to COVID-19.

By way of additional information to the court pending the conclusion of the status review hearing and 366.22 hearing, father's liberal visits of eight hours per week had continued until the older children were placed with mother for the extended visit. There was ongoing conflict between the paternal grandmother and mother during visits, and

10

grandmother was no longer available to supervise visits for father due to her return to work full time. Concern was expressed that the grandmother was attempting to alienate the children from mother. If the paternal grandparents could not supervise visits for father, and visits had to be supervised by CFS, the liberal visitation he had enjoyed was not sustainable.

In the meantime, the two older children appeared to be adjusting in mother's home, although they desired to visit with their paternal grandparents. The family therapist reported they were blending in with the family. On November 10, 2020, the social worker recommended that the two older children be returned to mother's custody under a family maintenance plan; although they preferred to live with their grandparents, they were enjoying the relationship with their siblings.

On November 12, 2020, the court resumed the contested review hearing. The younger children were maintained in mother's custody and the two older children were placed with mother under a permanent plan of return to mother. The court found that father failed to make substantive progress and there was no substantial probability the children would be returned to his custody within the statutory time frames, so his reunification services were terminated. Regarding visitation, the court ordered a minimum of one visit per week for two hours at the CFS office only, but it authorized additional visits if father paid for a professional monitor or found a CFS approved relative to supervise visits. Father appeals.

11

Father argues that the juvenile court abused its discretion by reducing his visitation with his biological children. He asserts there is insufficient evidence that continued visitation at the previous frequency was detrimental to the children or that reduced visits were in the children's best interests. We disagree for two reasons: First, the court did not "reduce" visits because father was never ordered to have eight hours of visitation per week. Second, the record supports the court's discretionary order upon the termination of reunification services to father.

*a.      The Court Did Not "Reduce" Visitation*

Father complains that the visitation order for a minimum of two hours of visitation per week was a reduction of visitation that was not supported by a finding that the previous visitation was detrimental to the children. Not so. At the disposition hearing, the court ordered that visitation between the parents and children would be for a minimum of one time per week for two hours, supervised by CFS, with authorization for CFS to increase visits in frequency and duration and to delegate supervision. Because the children were placed with father's parents, he was accorded more liberal access to the children under their supervision and CFS's authority to liberalize visits.

That original order was never modified. Beginning in June 2020, the court ordered, "Visitation between the child and father shall be supervised." It did not order a change in frequency or duration. At the 12-month review hearing pursuant to section

366.21, which occurred next in sequence, the court ordered "Visitation between the child and father shall be as previously ordered."

Finally, at the post-permanency review/366.22 hearing, the court ordered visitation for "a minimum of one time a week for two hours. I do have concerns that the grandparents appear to be going back and forth as to whether they're willing to supervise and causing conflict with the mother. [¶] I'll give authority for additional visitation as the children express a desire to have a longer time period with their father, that can either be through a paid monitor or if Father has any other adults that he can have assessed to allow for more frequent visitation . . . ." It did not reduce father's visits from the prior orders.

Section 362.1 provides for visitation when reunification services have been ordered and are still being provided unless the court specifically finds any visitation with the parent would pose a threat to the child's safety. The frequency of such visits, in contrast, depends on a broader assessment by the court of the child's "well-being." (§ 362.1, subd. (a)(1)(A); *In re C.C.* (2009) 172 Cal.App.4th 1481, 1491.) At the section 366.22 hearing, which applied to the two older children, "[t]he court shall continue to permit the parent or legal guardian to visit the child unless it finds that visitation would be detrimental to the child." (§ 366.22, subd. (a)(3).)

Here, the court ordered visitation at the same frequency and duration as it had provided in the original dispositional order. In other words, the visitation order complained of was not reduced, so there was no need to find detriment to the child.

13

Further, father holds the key to any modification of the visits, to increase them or make them unsupervised. To date, he has demonstrated no willingness to do so.

### b. The Court Did Not Abuse Its Discretion

"Visitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1070, citing *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) "As such, dependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation, which discretion we will not disturb on appeal unless the juvenile court has exceeded the bounds of reason." (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558, citing *In re Stephanie M*. (1994) 7 Cal.4th 295, 318.)

One factor affecting a court's exercise of discretion is linked to the particular stage of the proceedings. Before permanency planning, while reunification efforts are under way, section 362.1 provides that visitation must be "as frequent as possible, consistent with the well-being of the child" in order "to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian . . . ." (§ 362.1, subd. (a); *In re S.H., supra*, 197 Cal.App.4th at pp.1558-1559.)

However, after reunification services have been terminated, the parents' interest in the care, custody and companionship of the child is no longer paramount, and "'"the focus shifts to the needs of the child for permanency and stability."'"" (*In re S.H., supra*, 197 Cal.App.4th at p. 1559, citing *In re Stephanie M., supra*, 7 Cal.4th at p. 317, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)  Thus, the court must turn its focus to the child's best interests, rather than the parent's, in deciding issues that may arise.  (See also *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1238; *In re Stephanie M., supra*, 7 Cal.4th at p. 317 [the juvenile court must focus on the child's interests rather than the parent's interests once reunification services have terminated]; see § 366.21.)

Here, the father had enjoyed more liberalized contact with his children because of his parents' willingness to grant him frequent contact of liberal duration while the children were placed there, not because of the court's visitation orders.  That situation changed when the children were returned to mother's custody and the grandparents became unwilling or unable to commit to supervising visitation.  Without the approved relative supervision, father's visits would have to be supervised by CFS at the CFS office, unless father were willing to pay for a professional monitor or provide information regarding a relative who could be assessed as a potential approved monitor.  In other words, the key to liberalizing visitation is in father's hands.

The juvenile court did not abuse its discretion in re-ordering visitation at the same rate of frequency as ordered at the inception of its jurisdiction over the family.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

P. J.

We concur:

McKINSTER _____

J.

RAPHAEL _____

J.